KELLOW, JR., ADM'R, v. THE CENTRAL IOWA R'Y CO.

1. **Railroads**: DUTY AS TO SAFETY OF PASSENGERS: COMPANY'S CONVENIENCE NOT CONSIDERED. In considering whether or not it was an act of negligence for the defendant to stop a car containing passengers on the crossing of another road, the question of defendant's convenience was entirely immaterial.

2. **Instruction**: MISLEADING STATEMENT OF ISSUES. An instruction calculated to withdraw the attention of the jury from important issues in the case, and from the evidence bearing thereon, should not be given.

3. **Practice in Supreme Court**: NEW TRIAL: FINDING OF TRIAL COURT RESPECTED. The trial court granted a new trial on the single ground that it had erred in giving certain instructions, and, since it would have been error so to do in this case had the instructions not been duly excepted to at the time they were given, it will be presumed, in the absence of a contrary showing, that the exceptions indorsed on the instructions were taken and indorsed at that time.

4. **Railroads**: SAFETY OF PASSENGERS: MEASURE OF DILIGENCE: LEAVING COACH ON CROSSING. Railroad companies are bound not only to exercise reasonable and ordinary care for the safety of their passengers,

but to provide for their safety as far as human foresight and care will go. (See authorities cited in opinion.) And so, where defendant, as a matter of convenience, left its coach standing upon the crossing of another road, where it was struck by cars detached from a freight train on the other road, whereby plaintiff's intestate, a passenger in the coach, was killed, *held* that the company could not avoid liability upon the special finding of the jury that the collision could not reasonably have been anticipated.

5. ———: INJURY TO PASSENGER: NEGLIGENCE: PROXIMATE CAUSE IMMATERIAL. The duty of the carrier to exercise the highest degree of care for the safety of his passenger is founded on contract, and where the contract is broken, and the passenger suffers consequential injury, the carrier cannot escape liability because the proximate cause of the injury was the negligent act of another. See cases cited in opinion.

6. **Personal Injury :** INSTANTANEOUS DEATH: SURVIVAL OF ACTION: TEST. Whether or not the statutes of the state give a remedy for a personal injury resulting in absolutely instantaneous death is not determined; but where the injured person survives the injury for but a moment, a cause of action (which survives to his representatives) accrues to him as certainly as if he had lived for a month or a year thereafter; the test being whether he lived after the injury, and not how long he lived. (See cases cited in opinion.) This point affirmed in supplemental opinion, and *Sherman v. Western Stage Co.*, 24 Iowa. 515, overruled;— ROTHROCK, J., *not concurring.*

7. **Railroads :** PERSONAL INJURY: CONTRIBUTORY NEGLIGENCE: BURDEN OF PROOF: SPECIAL FINDING. In an action for damages on account of a personal injury caused by negligence and resulting in death, the plaintiff must show entire absence of contributory negligence on the part of the deceased. But where the injury occurred through a collision with defendant's passenger coach, (in which deceased was riding,) while it was standing upon the crossing of another road, and the jury found specially that they did not know what position the deceased occupied at the time of the collision, but thought he was on the platform, *held* that such finding did not show that plaintiff had failed to establish freedom from negligence on the part of the deceased, and did not preclude his right to recover, nor his right to a new trial on account of erroneous instructions.

*Appeal from Cerro Gordo Circuit Court.*

WEDNESDAY, APRIL 7.

PLAINTIFF's intestate was killed while traveling as a passenger on one of defendant's trains, and this action is prosecuted for the recovery of the damages sustained by his estate

in consequence of his death.   The cause was tried to a jury, who returned a verdict for defendant.  Plaintiff filed a motion for a new trial, in which he alleged twenty-one grounds for setting aside the verdict.   This motion was sustained as to one of the grounds alleged, and overruled as to all the others. Both parties appeal;   defendant's appeal being first perfected.

*H. E. J. Boardman, J. H. Blair* and *A. C. Daly,* for appellant.

*J. T. Stoneman* and *H. T. Reed,* for appellee.

REED, J.—The accident in which decedent lost his life occurred at Mason City Junction, between nine and ten o'clock on the evening of the twenty-first of June, 1881. Defendant's railroad runs north and south, and at the place where the accident occurred it crosses the main line of the Chicago, Milwaukee & St. Paul Railway.   This latter company has a yard situated about one-half mile west of the crossing, and a branch road operated by it, and known as the "Austin Branch," runs in a north-easterly direction from this yard, crossing defendant's track some distance north of the point where it crosses the main line of the other road. On the east side of defendant's road there is a track called the "Transfer Track," which is used in transferring cars from one road to the other.   This track connects with defendant's road at a point about eighty feet north of the crossing, and with the track of the Austin Branch some distance northeast of the point where it crosses defendant's road.

The companies used a common depot, which is situated in the angle west of defendant's track, and north of the main line of the other road.   The train in which plaintiff's intestate was traveling came from the south.   When it approached the station it was stopped at a point about 500 feet south of the crossing.   There was no train due at that hour on the other road, and none was within sight or hearing of defend-

ant's train-men at the time. The three rear cars of defendant's train were to be transferred to the Chicago, Milwaukee and St. Paul Company, to be taken by it to St. Paul, Minnesota, on the Austin Branch. When the train moved up to the station it was stopped when the baggage car arrived opposite the door of the baggage-room. This brought the front platform of the rear passenger car immediately over the crossing. Decedent entered the train at Marshalltown and rode in this car. He was ticketed to a point on the Austin Branch between Mason City Junction and St. Paul. It was the custom of defendant to stop its north-bound trains on the crossing, as was done at the time in question, and this custom was known to the employes of the other company. The labor of transferring baggage and express matter to and from the train was more conveniently performed when the baggage and express car was stopped opposite the door of the baggage room in the depot, and the transfer of cars to the other road was facilitated by dropping them from the train at a point south of the switch connecting the transfer track with defendant's track. The trains were stopped on the crossing as a matter of convenience in transacting the business at that point, but there was no absolute necessity for stopping them there.

At about the time the train arrived at the station, the employes of the Chicago, Milwaukee & St. Paul Company were engaged in getting the engine which was to haul the train to St. Paul out of the yard west of the crossing, and they found it necessary, in order to permit the passage of the engine on the track of the Austin Branch, to move a number of cars from a side track onto the main track. There is a sharp down grade in the main track from a point east of the yard to the crossing. A portion of the cars were pushed onto this grade, and five of them, which were loaded, parted from the others, and ran down the grade to the crossing, striking the passenger car, in defendant's train, which stood on the crossing, with sufficient force to throw it from the

track and turn it over on its side in the ditch. The train had been at the station about four minutes when the collision occurred. The moving cars were discovered by an employe of defendant when they were a short distance from the crossing, and he made an effort to get on one of them for the purpose of applying the brakes, but, finding that he would not be able to accomplish this before the collison, he jumped off. The passenger car was broken up to some extent by the collision, and the deceased was found under a portion of the wreck. Life was not yet extinct when he was found, but he died before he could be removed from the wreck. The engineer left his engine when the train stopped, and had not returned to it when the collision occurred. The fireman, however, remained on the engine, but no effort was made to move the train after the cars were discovered approaching the crossing. It was the custom of each of the companies to stop all trains at about 400 feet from the crossing, and this custom of each company was known to the employes of the other. It was not the custom to send out flag-men on the track of the other road when a train was stopped on the crossing, and none was sent out on the occasion in question.

I. The circuit court gave twenty-five instructions at the request of the defendant. The ground upon which the motion for a new trial was sustained was that the court erred in giving these instructions. While some of these instructions correctly express the law of the subject to which they relate, the court might properly have refused them as a whole. The charge given by the judge on his own motion covered every question involved in the case, and clearly, and in the main correctly, stated the law of the case; so that there was no occasion for giving the instructions asked by counsel. Many of them were but repetitions in other forms of what had already been given by the judge. Some of them, while being correct in the abstract, were so framed as to be well calculated to mislead the jury; and others, we think, are positively erroneous. One of them is in the following lan-

Kellow, Jr., Adm'r, v. The Central Iowa R'y Co.

guage: "As aids to assist you in determining whether it was or was not negligence for the railway company to permit its train to stand upon the crossing, you may consider the time; whether any train was due upon the railroad crossing defendant's railroad; *the position of the baggage-room at that point, and the convenience in discharging baggage and express there;* the fact of the connection of any other railroad, and its manner of connecting with defendant's train; the length of time defendant's train stood upon the crossing; the stopping of all trains upon both roads before going upon the crossing; and all other facts and circumstances elicited by the evidence."

*1. RAIL-ROADS: duty as to safety of passengers: company's convenience not considered.*

In effect, the jury are told by this instruction that, in determining the question whether defendant was guilty of negligence in permitting the train to stand upon the crossing, they might consider the fact that the baggage and express matter could be more conveniently discharged at that point than at the one at which it would have been discharged if the train had not been stopped until all of the cars had passed over the crossing. This is clearly wrong. The duty which defendant owed its passengers was to so manage the train as that they would not be exposed to any danger which human foresight and care could apprehend and provide against. And the question whether it was an act of negligence to stop the train upon the crossing depends entirely upon whether the passengers were thereby exposed to such danger; and in determining that question it is manifest that the fact that, by stopping the train at that point, the baggage car was placed in such position with reference to the baggage-room as that the express matter and baggage could be conveniently handled, is entitled to no consideration whatever. It has no tendency to prove that the passengers in the car were exposed to such danger by the stopping of the train at that point, or to disprove it.

Another instruction given at defendant's request is in the

following language: "The only act that plaintiff charges against this defendant is that it permitted its train to stand upon the railway crossing at Mason City Junction. You are now instructed

**2. INSTRUC-TION: misleading statement of issues.**

that, even though you find this defendant did permit its train to stand upon the railway crossing, and that, while so standing, the plaintiff was injured by the train or cars of another company running into the train in which plaintiff was, this of itself is not negligence; and upon the mere showing of this, without more, the plaintiff is not entitled to recover." This instruction assumes that the only act of negligence complained of by plaintiff was the stopping of the train, on which the deceased was traveling upon the crossing. But it is alleged in the petition, not only that the train was negligently stopped upon the crossing, but that the cars of the other company were, through defendant's negligence, allowed to run into and collide with defendant's train; and there was evidence tending to prove that irregular trains,—that is, trains that were not run upon any regular schedule time,—frequently passed upon the other road, and that the couplings of heavy freight trains were liable to break, and cars by that means escape from the control of the train-men, and that a train standing upon a crossing was alway in some danger of being run into by such trains, or by cars which had broken loose from freight trains.

There was also evidence tending to prove that if a flagman had been sent a short distance west of the crossing he might, by climbing upon the cars which collided with the train, and applying the brakes, have stopped them before they reached the crossing. Plaintiff had the right, under the pleadings and evidence, to have the jury pass upon the question whether defendant was negligent in omitting to take proper precaution to protect the train, while it stood upon the crossing, from dangers of the character of that which occasioned the injury complained of. The instruction, however, told them that the only act of negligence which was

charged against defendant was that it permitted its train to stand upon the crossing. It is clearly erroneous. Objections are urged to other instructions, but we do not deem it necessary to consider them.

II. It is insisted that there is no evidence in the record that the instructions were excepted to by plaintiff at the proper time. It is conceded that the following words, " Given, Exc. by plaintiff," or other words equivalent to them, are indorsed in the hand-writing of the circuit judge on the margin of each of the instructions given at defendant's request. The point urged by appellant is that it does not appear when these indorsements were made. It is true, doubtless, that plaintiff was not entitled to a new trial on the ground that the instructions were erroneous, unless he took exceptions to them, either when they were given or within three days after the verdict was returned. Code, § § 2787, 2789, and subd. 8 of § 2837. The circuit court, it will be borne in mind, sustained the motion on the single ground that it had erred in giving these instructions. It was the duty of the court, before making the order, to ascertain whether the exceptions had been taken in proper time. As the indorsements were made by the judge, he knew, of course, whether they were made at the time the instructions were given, or subsequently to that; and, in the absence of any showing to the contrary, we will presume that they were taken and noted on the instructions at the time they were given.

*3. PRACTICE in supreme court: new trial: finding of trial court respected.*

III. In addition to the general verdict, the jury answered certain interrogatories which the court, at defendant's request, submitted to them. Among these were the following: "Had defendant any warning or knowledge of the coming of the Milwaukee cars, sufficient to have escaped?" "Could this defendant reasonably have expected or anticipated, under the circumstances, that some cars, without any one in control, would run down upon the crossing as they did?" The jury

*4. RAILROADS: safety of passengers: measure of diligence: leaving coach on crossing.*

answered these questions in the negative, and defendant contends that these findings determine that it was not guilty of such negligence in the transaction as to render it liable for the injury complained of. That the first finding determines that it was not negligent in failing to remove the train from the crossing after the danger was discovered, is certainly true. The other finding is to the effect that defendant could not reasonably have anticipated, under the circumstances, that the other company would permit its cars to run down to the crossing and come in collision with its train standing upon the crossing. Defendant's position is that it was bound to anticipate and make provision against such dangers only as might reasonably be expected to arise under the circumstances, and that, as the injury complained of was occasioned by the happening of an event which could not reasonably have been expected to happen under the circumstances, it was not negligent in failing to make provision against it. This claim is based upon the idea that the carrier is bound to exercise only reasonable or ordinary diligence and care for the safety of his passenger. But this is not the extent of his duty. He is bound to the most exact care and diligence in all the arrangements for the safety of the passenger. He is bound to make reasonable provision against any danger which human foresight can anticipate. It is his duty to provide for the safety of the passengers " as far as human foresight and care will go." This is the rule on the subject as recognized by the former adjudications of this court. *Sales v. Western Stage Co.*, 4 Iowa, 547; *Frink v. Coe*, 4 Greene, 556; *Bonce v. Dubuque St. R'y Co.*, 53 Iowa, 278. See, also, *McElroy v. Nashua & L. R. Corp*, 4 Cush., 400; *Eaton v. Boston & L. R. Co.*, 11 Allen, 500; *Christie v. Griggs*, 2 Camp., 79; Hutch. Carr., §§ 498, 504.

As a matter of convenience in the transaction of its business at the station, defendant stopped its train upon the crossing, and kept it standing there while the transfer of baggage was being made. While standing there it was liable to be

run into by the trains or cars of the other road.' A collision might be occasioned either by the negligence of the employes of the other company, or by unavoidable accident in the operation of its trains. As defendant chose to place its train in that position, it was under obligation to make provision for the protection of the passengers on its train against the dangers incident to the situation. It may be that defendant could not " reasonably have anticipated " that the employes of the other company would be negligent, or that an accident would happen which might cause an injury to its train while in that position. Still, if, according to human experience and observation, an injury similiar to the one in question was liable to occur to a train in that situation, it was bound to make reasonable provision against the danger. The special finding by the jury, therefore, does not necessarily determine that defendant is not liable for the injury.

IV. Another positon urged by appellant is that the proximate cause of the injury was the act of the employes of the Chicago, Milwaukee & St. Paul Company in permitting the cars which came in collision with the train to escape from their control and run down the grade to the crossing; and that, conceding

5. ——:
injury to passenger: negligence: proximate cause immaterial.

that its act in permitting the train to stand on the crossing, without taking any precaution against the danger, was negligent, still, as that was not the immediate cause of the injury, but was entirely independent of the act which did cause it, it is not liable therefor. But this claim, we think, misconceives the real ground upon which the carrier is held liable for an injury sustained by the passenger. The duty of the carrier to make provision for the safety of the passenger grows out of the contract between the parties; and if he fails, even through negligence, to perform that duty and the passenger suffers an injury in consequence of such failure, the carrier is held liable therefor, on the ground that his negligence constitutes a breach of his undertaking. It may be conceded, then, that the injury would not have occurred but

for the act of the employes of the other company in pushing the loaded cars upon the grade and permitting them to escape from their control, and that this was the immediate cause of the injury. But it is equally certain that the collision would not have happened if defendant had not kept its train standing upon the crossing; and, as we have seen, the evidence tends to prove that, if it had taken precaution against a danger which might have been apprehended, the collision might have been prevented. If defendant, by stopping the train upon the crossing, exposed the passenger to a danger which might have been anticipated, and at the same time neglected to take any precautions to protect him therefrom, it thereby violated its undertaking with him, and, if he suffered the injury in consequence of this violation by defendant of its contract, it is liable therefor, even though the immediate cause of the injury was the wrongful or negligent act of another. The principle contended for by defendant would govern in a case where one has been injured by the independent acts of two wrong-doers, neither of whom owed him any special duty. But it has no application where the act of one of the wrong-doers constitutes a breach of contract. This distinction is clearly recognized by the following cases: *Eaton v. Boston & L. R. Co.*, 11 Allen, 500; *Cuddy v. Horn*, 46 Mich., 596; (S. C. 41 Am. Rep., 178;) *Colegrove v. New York, etc., R. Co.*, 20 N. Y., 492; *Barrett v. Third Ave. R. Co.*, 45 N. Y., 628.

V. The following interrogatory was submitted to the jury, and was answered in the affirmative: "Was the death of the

6. PERSONAL INJURY: instantaneous death: survival of action: test.

deceased of that nature commonly known as instant death?" Counsel for defendant contend that this finding determines that the death of Carter was instantaneous, and consequently, as no right of action accrued to him on account of the injury, none survived to his representatives. The position is that at common law an action cannot be maintained for the death of a human being, and there is now no statute in force in this

state giving a remedy for such injury; and that the only action which can be maintained by the representatives of a decedent on account of the injuries which occasioned his death is on the right of action which accrued to him before his death, and which survives under the provisions of section 2525 of the Code.

We do not find it necessary to determine whether this position, that the statutes of the state give no remedy for the death of a human being, is sound or not. It is conceded that, if a cause of action accrued in favor of Carter for the injury which caused his death, it survived, and may be maintained by his representatives. And, in our opinion, the special finding does not determine that such cause of action did not accrue to him before his death. The finding is that " his death was of that nature *commonly* known as instant death." A death is not necessarily instantaneous in fact because it is of that nature. If the injury which caused the death is necessarily fatal, and death results in a few moments from it, it would no doubt be commonly called an instant death; but, as the person survived the injury for that brief period, it cannot be said that the death was instantaneous. The evidence shows that Carter survived the injury for a few moments. He was not found for some time after the collision occurred, but life was not extinct when he was found. He still breathed, although he died before he could be removed from the wreck. His death, then, was not simultaneous with the injury which caused it. It was not, in fact, instantaneous, although of the character commonly known or designated as instant death. As he lived after the injury, we are of the opinion that, if it was occasioned by the negligence of the defendant, a cause of action therefor accrued in his favor. It can make no difference, we think, that the period of time between the injury and his death was short.

In determining whether a cause of action accrued to him, the test is whether he lived after the injury, and not the length of time he lived thereafter. If he survived the injury

but for a single moment, the cause of action accrued to him as certainly as it would have done if he had lived for a month or a year thereafter. This view is sustained by the following authorities: *Hollenbeck v. Berkshire R. Co.*, 9 Cush., 478; *Bancroft v. Boston & W. R. Corp.*, 11 Allen, 34; *Kennedy v. Standard Sugar Refinery*, 125 Mass., 90.

VI. The jury were required to answer the following interrogatories: "Where was the deceased when the colli-

sion occurred,—in the car, on the car platform, or upon the ground?" "Was it the part of a prudent person to occupy the position he [the deceased] occupied at the time of the accident?" The answer to the first interrogatory was: "On the platform, we think;" and to the second: "We don't know the position he occupied." Counsel for defendant contend that, as the burden was on plaintiff to show affirmatively that the intestate was not guilty of any negligence which contributed to the injury, he is not entitled under these findings to recover; and consequently a new trial should not have been awarded him. As we have already seen, certain instructions, given by the court, were erroneous, and, as the general verdict was undoubtedly influenced by these instructions, plaintiff is entitled to a new trial, unless the special findings determine definitely that he is not entitled to recover. If the jury had found specially that the decedent was guilty of negligence which contributed to the injury, defendant would undoubtedly have been entitled to judgment, notwithstanding the erroneous instructions, as they did not relate to that question, and could not have misled the jury as to it; or if they had found that plaintiff had failed to prove that the intestate did not, by any want of care on his part, contribute to the injury, perhaps the same result would follow, as the burden was on him to prove the absence of all contributory negligence.

We think, however, that the special findings in question do not determine either that Carter was guilty of contribu-

<div style="margin-left:0">

7. RAIL-
ROADS: personal injury: contributory negligence: burden of proof: special finding.

</div>

tory negligence, or that plaintiff had failed to prove that he was not guilty of such negligence. They determine simply that the jury was left in doubt by the evidence as to the position in which he was at the time of the collision. The proof was that he was found under the rear trucks of the car. which had been detached from the body of the car as it turned over on its side. It is clear that he must have been either on the rear platform or on the ground near it when the collision occurred, but there is no evidence as to when he went out of the car. He may have been in the exercise of reasonable care in either position. The reasonable inference from the circumstances is, either that while in the car he learned in some manner that the accident was about to occur, and attempted to escape by the rear door and was caught in the wreck, or that he had gone out of the car for some purpose before the collision, and was standing either on the platform or on the ground near it at the time it occurred. If the former is the case, he did what the great majority of men would probably have done under like circumstances. Or if he had gone out of the car for some purpose of his own before the collision occurred, the fact that he was on the platform or on the ground is not necessarily evidence of negligence on his part. In doing so he did simply what is done every day by prudent and careful travelers on railroads. The danger of the situation was created, not by the act which he was doing, but by the occurrence of a circumstance entirely independent of that, and which was not to be anticipated by him in the ordinary course of events. Whether it was an act of negligence, then, for him to be on the platform or on the the ground at the time of the collision depends upon whether he knew, or in the exercise of ordinary care might have known, of the threatened danger in time to have avoided the injury; and this will be a question for the jury to determine from all the circumstances of the transaction.

All we determine is that the special finding by the jury, that the position occupied by him at the time of the collision

was not shown by the evidence, does not necessarily preclude a recovery by plaintiff. As we reach the conclusion that the the circuit court rightly set aside the verdict and granted a new trial, we do not consider the questions presented on plaintiff's appeal.

<div align="right">AFFIRMED.</div>

### SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

REED, J.—Appellant filed a petition for a rehearing of the question considered in the fifth paragraph of the foreging opinion. It is insisted that the opinion proceeds on a mistake of fact as to the length of time which elapsed between the occurrence of the injury and the death of Carter. We have examined the evidence contained in the record, and are satisfied that without conflict it establishes the facts substantially as stated in the opinion. It shows beyond controversy, we think, that the death was not simultaneous with the injury. We concede that the time between the two occurrences was brief, perhaps not exceeding three to five minutes. Our holding on the question considered is based, however, not on the length of time that Carter survived the injury, but upon the fact that he lived after it occurred.

It is insisted, however, that the holding in that respect is not in harmony with what was held in *Sherman v. Western Stage Co.*, 24 Iowa, 515. No reference is made to that case in the opinion, for the reason that our attention was not especially called to it. That was an action by an administrator for damages on account of a personal injury which caused the death of the intestate, and the question whether a right of action accrued in favor of the decedent during her life-time on account of the injury was important, because of its bearing on the question as to when the statute of limitations began to run. The injury in that case was caused by the overturning of a boat in which the deceased was being transported,

*SAME AS NO. 6, ante.*

by which she was thrown into the water and drowned. The interval of time between the overturning of the boat and the death of the intestate was greater, perhaps, than that which elapsed between the collision in question and the death of Carter, and a majority of the court were of the opinion that a cause of action did not accrue in favor of the deceased for the injury.

Our holding in the foregoing opinion is clearly not in accord with that view. If it could be said that that holding established a rule of property, we would not perhaps be justified now in questioning its correctness, however unsatisfactory it might appear to us to be. But the question is not of that character. No property rights or interests are affected by it, and the position appears to us to be so clearly untenable that we think it ought not to be adhered to. The reasoning of Judge COLE, who wrote the opinion, but did not concur in the conclusion, appears to us to be conclusive on the question; and, in addition to what is said by him in the opinion, we deem it necessary only to add that it seems to us impossible (unless such result is produced by operation of positive statute, or follows as a consequence of the judgment of a competent court) that there should be a termination of the legal rights of an individual before his death. So long as his life lasts, he is under the protection of the law, and retains every right and benefit granted by it. The estate of the decedent, Carter, did not descend to his representatives until his death. Until that moment it was vested in him. He was capable, during the brief period that elapsed between the injury and his death, of taking by inheritance. If a weaker person than he had been involved in the same catastrophe, and had lost his life by the same means, the law, for the purpose of fixing the course of descent, would, in the absence of proof on the question, have presumed that he survived the weaker individual. It would have recognized that, for that brief moment, he was vested with a perfect right to the property, and would have disposed of it accordingly; and if the injury suffered by

him was the result of the wrongful act of another, we know of no valid reason for holding that a right of action therefor would accrue in his favor within the moment of life that remained with him as effectually as it would have done within a month or a year, if he had so long survived the injury. We are content, therefore, to adhere to the view taken in the former opinion; and the petition for rehearing will be overruled.

ROTHROCK, J., does not concur in this view