MRS. W. C. HAUSER, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

APRIL 3, 1928.

*J. G. Gamble, R. L. Read,* and *A. B. Howland,* for appellant.

*Nichols & Nichols* and *R. S. Milner,* for appellee.

ALBERT, J.—That the plaintiff was a passenger on one of defendant's trains is admitted. Briefly stated, as such passenger she went into the toilet room of the coach on which she was riding, and while there fainted, and fell to the floor, with the result that her face came in contact with a steam pipe located near the floor of the toilet room, and she was seriously burned and injured. The only ground of negligence charged against the railroad company is that it failed to properly install guards or protection, so that one coming into contact with such heating apparatus would not be burned and injured.

But two questions are raised by the company on the appeal, the first being:

"Was the defendant negligent, as charged in plaintiff's petition; and (2) if the defendant was negligent, was it the proximate cause of the plaintiff's injury and damage?"

To a solution of these questions it is necessary to turn to the facts in the case: On January 16, 1923, the plaintiff, a married woman 51 years of age, was a passenger on appellant's train, en route from Vinton to Estherville, Iowa. She boarded the train about 1 o'clock in the morning. It was a cold night, and there was snow on the ground. At this time, plaintiff was undergoing the change of life, and was subject to the usual symptoms. Between 4 and 5 o'clock in the morning, she became nauseated and sick at her stomach, and put on her overcoat, and went to the toilet room. The car was hot, and she says she felt "stuffy and dizzy." She remembers opening the door of the toilet room and entering, closing the door, and placing her purse on the washstand. She recalls that there was a washstand and a water cooler in one end of the room, and a toilet with a seat at the other end. She did not notice the steam pipes. The next thing she remembered, she was lying on the floor of the toilet room, and had suffered an injury to her face. She does not know how long she was unconscious; but when she came to, her head was resting on the floor under the water cooler, her back toward the door, and her feet toward the toilet seat. She was not against the steam pipes when she regained consciousness. One side of her face was severely burned, and later a piece of human skin was found on the steam pipe at the point near where she says her head was when she regained consciousness.

This briefly outlines the facts of plaintiff's case.

While it is true that there is some discussion as to whether the car and the toilet room were overheated, there is no charge of negligence in plaintiff's petition on this ground; hence it cannot be considered as a ground of negligence.

To a fair understanding of this situation, we set out a copy of one of the exhibits in the case, showing the plan of this toilet room and its contents:

It will be noted that the inside dimensions of this toilet room are 5 feet by 3 feet 1 inch. The door opening into the toilet room is shown as it is swung back against the toilet. On the opposite side of the room are a wash basin and a water cooler. The water cooler extends 17 inches from the corner toward the door, and 12 inches in the opposite direction. The wash basin in the other corner extends 19½ inches in each direction, thus leaving a space of about 5½ inches between it and the water cooler. The bottoms of the water cooler and the wash basin are about 28 inches from the floor. Under the basin and water cooler are two steam pipes, 1½ inches in diameter, running parallel with the floor, the lower pipe being 2½ inches, and the upper one about 9 inches from the floor, and about 4 inches from the wall. These pipes, carrying live steam from the boiler of the engine, were part of the heating system of the car, and especially adapted to furnishing heat for this toilet room. It is against one of these pipes that plaintiff is alleged to have fallen, and received her injuries.

The question is whether or not, under the facts in this case, a failure to protect these pipes with guards of some character or description was negligence on the part of the railroad company. Appellee justifies the ruling of the court as follows:

"The duty of a railway company as a carrier of passengers is to so manage its trains as not to expose such passengers to any danger which human foresight and care would apprehend and provide against. When such danger is reasonably to be expected to arise under the circumstances, it is bound to make provision against all dangers which human foresight might expect,"—citing *Kellow v. Central Iowa R. Co.*, 68 Iowa 470; *Moore v. Des Moines & Ft. Dodge R. Co.*, 69 Iowa 491; *Douglass v. Sioux City R. Co.*, 91 Iowa 94; *Weber v. Chicago, R. I. & P. R. Co.*, 175 Iowa 358.

"(B) The furnishing of a safe car—with safe toilets—is one of the duties of a railroad company, and is an incident of transportation."

The last expression of this court seems to have been the *Weber* case, above cited, in which we said:

"There is an implied undertaking on the part of the defendant to deliver the passenger in safety at his destination, and to this end, the law imposes upon the carrier the duty of exercising the highest degree of care not to expose the passenger to any danger which human care and foresight could reasonably anticipate and provide against, and to exercise the highest degree of care and diligence reasonably consistent with the practical operation of its railroad and the conduct of its business; and if it fails in the discharge of this duty, and injury results, it is chargeable with actionable negligence."

It is a well settled doctrine, announced by all of our cases, and a doctrine of universal holding, that a railroad company is not an insurer of the lives or persons of its passengers. *Cronk v. Wabash R. Co.*, 123 Iowa 349; *Blumenthal v. Union Elec. Co.*, 129 Iowa 322; *Bloom v. Sioux City Traction Co.*, 148 Iowa 452; *Brehm v. Atchison, T. & S. F. R. Co.*, 111 Kan. 242 (206 Pac. 868); 5 Ruling Case Law 73, Section 712. We are committed to the rule announced in the *Weber* case as to the duty of the carrier. The line of demarcation between the highest degree of care and insurance is not easy of description. Suffice it to say that the company is not required to use such degree of care and

foresight as will absolutely prevent injury. The carrier is not charged with the duty to provide or maintain a vehicle or appliance in such condition as will absolutely prevent injury to passengers. 10 Corpus Juris 959. It is only required to exercise that high duty against those injuries which it could "reasonably anticipate and provide against." That the construction of these toilet rooms in passenger coaches for the accommodation of the passengers is a duty imposed by law, see 10 Corpus Juris 962. Equally so, it is the duty of the carrier to provide for the comfort of passengers by furnishing reasonable means for heating its cars and keeping them warm in cold weather. 10 Corpus Juris 961. The evidence in the case shows that this coach and the toilet room were constructed by the largest coach manufacturer in the world, and were of standard construction.

Turning to the facts in the case: That this woman was frightfully injured, is not debatable. The question is whether or not, by the company's failure to cover these pipes, or in some way protect them in the exercise of the high degree of care required, it can be said that the company should have reasonably anticipated this injury, or a similar one, to this woman.

In passing upon this question, another element must be taken into consideration, and that is the purpose for which this toilet room was constructed. It is a well-known fact that these coaches all bear a compartment of this kind for the accommodation of their passengers, and when a compartment is constructed as this one was, it is to be used for the purpose for which it was constructed. Not that we do not think this woman was entitled to enter this compartment when she was sick and nauseated, for she did have such right; but the purpose and use of the compartment must be considered, in passing upon this question. It is quite apparent from the construction of this compartment that the part thereof under the water cooler and wash basin was not intended for the use of the passengers. There was nothing below these basins of interest to the passenger, or put there for his use or accommodation, or for any purpose directly affecting him. If plaintiff had used this toilet room in the usual and ordinary way, and for the purposes for which it was intended, she would not have been injured. In order to reach the steam pipes in controversy, an occupant of the room would be required to either kneel or lie down on the floor; and the company could

not reasonably anticipate that an occupant of the room would do this. Even though the defendant is bound to anticipate that an occupant may faint or lose consciousness, the probability that she would fall with her face against a steam pipe is so remote that it cannot be held to be negligence for which the company should respond. Nor do we think it can be said that the company, in exercising the high degree of care required, could anticipate that an occupant of the room would faint and fall upon the floor in such a way as to throw some part of her body against the steam pipes in controversy. The company, in the construction of this compartment, was required, under a high degree of care, to construct it with reference to the purposes of its intended use, and with reference to prudent and careful use thereof by its passengers. When the company had exercised that high degree of care and foresight required of it, it could not reasonably have anticipated that such an injury as this would occur. This is not a case of the exposing of hot steam pipes in a part of the car intended for the use of passengers, where, by the exercise of the care required under such circumstances, it could reasonably be anticipated that a passenger would come in contact therewith.

This seems to be a pioneer question, as neither briefs cite any authority exactly in point; nor have we been able, on diligent search, to find anything on the exact proposition. Some light, however, is thrown on the question in the cases of *Werbowlsky v. Ft. Wayne & E. R. Co.*, 86 Mich. 236 (48 N. W. 1097); *Adduci v. Boston Elev. R. Co.*, 215 Mass. 336 (45 L. R. A. [N. S.] 969); *Stierle v. Union R. Co.*, 156 N. Y. 70 (50 N. E. 419).

It is our conclusion that, if we allow the railway company to be held liable under these circumstances, we shall simply be holding that it was, in effect, an insurer; and this would be in violation of the well settled rule on this proposition. We conclude, therefore, that the plaintiff failed to make out a case of actionable negligence against the railway company, and the motion made by the company to direct a verdict should have been sustained.—*Reversed.*

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, MORLING, KINDIG, and WAGNER, JJ., concur.