R. T. REMER, Appellee, v. TAKIN BROTHERS FREIGHT LINES, INC., et al., Appellants.

No. 44876.

904

JANUARY 9, 1940.

Reed & Beers and Perrine & Albright, for appellants.

G. P. Linville and W. R. Watsabaugh, for appellee.

MILLER, J.—The plaintiff's petition alleges that on December 26, 1937, he was standing on the parking adjacent to a street in Cedar Rapids when the defendants' truck struck a truck of one Voracek, then standing in said street, forcing the same onto the parking and against the plaintiff causing injuries. The allegations of negligence were, (1) excessive and dangerous speed of defendants' truck, (2) not having the truck under such control that it could be stopped within the assured clear distance ahead, (3) failure to drive around the Voracek truck when it was seen or should have been seen in the street, (4)

failure to stop defendants' truck when it was seen or should have been seen that it was about to collide with the Voracek truck. Damages were claimed as follows: Hospital bill, $172.95; ambulance fee, $4; doctor bills, $90; damage to clothing, $25; loss of wages, $542; pain and suffering, past and future, $3,000; permanent disability, $12,000; total, $15,833.95. Defendants' answer was a general denial. There was a trial to a jury which returned a verdict for plaintiff in the sum of $7,291.95. Judgment was entered thereon, from which defendants appeal, asserting 13 assignments of error.

I. Appellants' 12th assignment of error complains of the ruling on a motion for a directed verdict made at the close of the plaintiff's evidence and renewed at the close of all the evidence. The first assignment of error complains of the court's instruction 9, which undertook to advise the jury in reference to the duties imposed upon defendants by the provisions of section 5029 of the Code, particularly the duty to refrain from driving at a speed greater than will permit one to bring his vehicle to a stop within the assured clear distance ahead, assuming that all persons using the highways will observe the law. As the propositions presented by these two assignments of error are quite definitely related to each other, we will consider them together.

Plaintiff testified that, at about 1:35 p. m. on December 26, 1937, he, with his wife, two sons and two neighbor boys, was riding in his car in a southerly direction on highway No. 11, entering Cedar Rapids, Iowa, at a point where said highway traverses Thirteenth street of that city. They had driven to Cedar Rapids from Center Point, where plaintiff is president of the North Linn Bank. The paving was fairly free from ice until they reached Cedar Rapids, where they found the street covered with ice. As they proceeded south on Thirteenth street, they approached a library station on the west side of the street, in front of which a car was parked. The plaintiff's son, Theodore, was driving the car. He attempted to avoid the parked car, but scraped its fenders. He slowed down, pulled over to the curb and stopped in front of a residence designated as 855 Thirteenth street, two doors south of the library station. Plaintiff and his younger son went back to see what damage had been done. They found a little dent on the fender. They re-

turned to plaintiff's car. While plaintiff was standing in the parking northwest of the car, he saw a pickup truck, operated by one Voracek, proceeding south on the pavement. When it attempted to avoid the car parked in front of the library station, it started to skid and turned almost completely around in the street. A large truck and trailer, owned by the defendant, Takin Bros. Freight Lines, Inc., and operated by the defendant, Leo Williams, was following the Voracek truck. After the Voracek truck had skidded around, the defendants' truck collided with it, catapulting it over the curb onto the parking, striking plaintiff and rendering him unconscious.

Various witnesses testified besides the plaintiff. As is usually the case, the testimony varies over a wide range, is difficult if not impossible to reconcile, and renders the facts actually existing shrouded in doubt and confusion. Appellants complain that some of the evidence tends to present a fantastic situation which could not have happened. Unfortunately, accidents of this kind happen so quickly and unexpectedly that the witnesses, being wholly unprepared for the eventualities, do not grasp all of the details at the time, and, when called upon to testify concerning them approximately a year later as in this case, do not give a strictly accurate account of the events that took place. Their estimates vary as to distances, speed of the vehicles, etc. This is due to the frailties of human nature. It does not mean that any witness desires to misrepresent or falsify. Such seems to be the situation here. In such a case, where the testimony is conflicting, it is for the jury to determine the credibility of the witnesses and ascertain the facts from the testimony. This court, on appeal, is required to view the evidence in the light most favorable to the party in whose favor the verdict was returned. So viewing the record, proper inferences to be drawn from the evidence may be at variance with the actual facts, could they be known. It is not for us to determine what the facts were but solely what the jury was warranted in finding them to be.

Of course, certain facts are established without dispute. There is no question but that the accident occurred at about 1:35 p. m. December 26, 1937, on Thirteenth street in Cedar Rapids; the street was icy; the plaintiff's car collided with the car parked in front of the library station, stopped some distance

from it; the plaintiff was in the parking; the Voracek truck skidded around in the street, was struck by the defendants' truck, was catapulted into the plaintiff and plaintiff was injured as a result thereof. Thus far the picture is clear. When we undertake to fill in the details, our troubles begin.

One of the important details is the speed of the trucks involved. The estimates of the witnesses vary. To some the speed was slow, to others it was fast. The jury was warranted in finding that the defendants' truck was proceeding at a speed of approximately 20 to 25 miles per hour. The jury was also warranted in finding that, under the circumstances shown by the record, the speed was excessive and dangerous in view of the icy condition of the pavement.

Another important detail is the distance between the Voracek truck and the defendants' truck when the Voracek truck commenced to skid. Defendants contend that the two trucks were so close together that it was impossible for the defendant Williams to avoid the collision. However, the witness Kenneth Benesh, who was riding in the Voracek truck, testified definitely that, after the Voracek truck had skidded around and stopped facing north, he saw the defendants' truck coming from the north about 150 to 200 feet distant. As above indicated, this testimony does not coincide with the estimates of other witnesses, but was a factor that the jury was entitled to consider. If the jury believed him, the defendants' truck proceeded south for a distance of 150 to 200 feet with the Voracek truck in plain view, at rest headed in a northerly direction; the defendants' truck avoided the car parked in front of the library station, but was unable to avoid the Voracek truck, although its wheels were approximately two feet from the curb on the west side of the street, struck the Voracek truck and catapulted it against the plaintiff.

The defendant Williams was unable to attend the trial, being absent because of the funeral of his father. It was stipulated that he would testify that he was driving the defendants' truck at a speed of approximately 10 miles per hour, following the Voracek truck at a distance of about 50 feet; when it started to skid, he attempted to turn to the left to avoid it, struck it as it was turning around in the street, causing it to go over the curb; he proceeded down the street a distance of

100 to 150 feet and stopped; it was possible for him to see down the street for a distance of several blocks.

The testimony of Williams is directly opposed to that of Benesh. Apparently the jury believed Benesh in preference to Williams. This was within their discretion. Consideration of the testimony of these two witnesses, together with the testimony of other witnesses which we do not set out at length, presented a disputed question of fact. On the whole, we are satisfied that a jury question was presented whether defendants were guilty of negligence that was the proximate cause of the injury.

The court's instruction 9 interpreted section 5029 of the Code, in so far as it imposes a duty upon the operator of a vehicle to refrain from driving at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead. Several objections were asserted to said instruction. Only one is argued by appellants here. The contention here made is that, by the phrase "assured clear distance ahead," the legislature meant the distance within which a driver can see objects on the highway ahead of him, and, since Williams testified that he could see for several blocks down the street, he was not violating the assured clear distance ahead rule because he could stop within the distance that he could see.

Appellants state:

"To illustrate, if we assume that the defendant could see three blocks and could stop his truck in one block if he hit a car that was proceeding in the same direction fifty feet ahead of him, it is our contention that the statute requiring him to be able to stop within the 'assured clear distance ahead' was not violated."

In conclusion, appellants' contention is summarized as follows:

"In short, it is our contention that the assured clear distance ahead rule does not apply to the case at bar because the difficulty developed unexpectedly and because there is no duty under that rule requiring one to drive so that he can stop without colliding with the vehicle ahead of him if he is driving so that he can stop within the distance he can see."

Appellants rely upon the holding of this court in the case

of Jordan v. Schantz, 220 Iowa 1251, 1255, 264 N. W. 259, 261, wherein we state:

"There seems to be somewhat of a disposition to regard the statute as one prescribing circumstances under which the motorist must stop. Much argument based upon the statute seems to assume that it requires the driver of an automobile to stop before reaching any discernible object which appears before him on the highway. This is not a proper application of the statute. That statute has nothing to do with the question of when a motorist must stop. It is a statute defining proper speed and nothing more."

In that case, the collision was between two vehicles proceeding in opposite directions. Section 5029 recognizes that each operator had a right to assume that the other would yield one half of the traveled portion of the highway. Therefore, each had a right to assume that the highway ahead of him would be clear. There was no occasion to apply section 5029 to the facts shown by the record in that case, and we so held.

In this case, however, defendants' truck and the Voracek truck were proceeding in the same direction. Also, there was a car parked in front of the library station, and plaintiff's car was parked two doors farther south. As defendant Williams was proceeding south on Thirteenth street, there were two cars ahead of him parked on the street, and one car traveling ahead of him. He could see for several blocks beyond all three of these objects. It is appellants' theory that section 5029 merely limited his speed to such that would permit him to stop within the distance that he could see, and that, in fixing his speed, he had a right to ignore the three cars ahead of him that were within that distance. We have never announced any such construction of section 5029, and our decisions are contrary thereto.

The case of Albrecht v. Waterloo Const. Co., 218 Iowa 1205, 1212, 257 N. W. 183, 186, involved a collision between the plaintiff's car and the defendant's car at a time when the defendant's car was parked on the highway and the plaintiff, approaching from the rear, failed to avoid colliding therewith. Unquestionably the plaintiff in that case could stop his car within the distance that he could see. This court held that he also had to *adjust* his speed not only to the distance within

which he could see but also with respect to a parked car situated within that distance on the same side of the road ahead of him. In so holding, we state:

"It is our conclusion that the driver of plaintiff's car failed to have his car under control or drive it at such a rate of speed that would permit him to bring it to a stop within the assured clear distance ahead. With knowledge of the truck's presence on the· pavement at least 250 feet ahead, he failed to slacken the speed of his car, or turn to the left in time to avoid the collision. It is clear from the record in this case that the driver of plaintiff's car was guilty of negligence in failing to comply with the assured clear distance ahead statute, and that his negligence was the direct and proximate cause of the collision. This conclusion is supported by the following cases: Ferguson v. City of Des Moines, 197 Iowa 689, loc. cit. 693, 198 N. W. 40; Scoville v. Clear Lake Bakery, 213 Iowa 534, 239 N. W. 110; Dennier v. Johnson, 214 Iowa 770, 240 N. W. 745; Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953; Isaacs v. Bruce, 218 Iowa 759, 254 N. W. 57; Bruening v. Miller, 57 S. D. 58, 230 N. W. 754; Island Express Co. v. Frederick (Del. Sup.) 171 A. 181; Geisen v. Luce, 185 Minn. 479, 242 N. W. 8."

Another significant case is that of Lukin v. Marvel, 219 Iowa 773, 777, 259 N. W. 782, 784, wherein we state:

"In most of the cases heretofore arising under this statute the damage was sustained by the car striking another car parked upon the highway without lights. It is the general rule that in such cases, where the evidence failed to show any diverting circumstances as a legal excuse for the collision, the driver striking the unlighted car was guilty of contributory negligence, under the 'assured clear distance' statute, in .failing to drive at such a speed that he could stop in time to avoid the collision. Hart v. Stence, 219 Iowa 55, 257 N. W. 434; Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893; Ellis v. Bruce, 217 Iowa 258, 252 N. W. 101; Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569; Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Jarvis v. Stone, 216 Iowa 27, loc. cit. 33, 247 N. W. 393; Peckinpaugh v. Engelke, 215 Iowa 1248, 247 N. W. 822; Deweese v. Iowa Transit Lines, 218 Iowa 1327, 256 N. W.

428; Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953.''

The plaintiff's petition alleges that the defendants' truck was negligently driven into the Voracek truck when it was ''then in a stationary position upon the west side of the paved portion of said'' street. While this allegation is denied in the answer and the testimony of the defendant Williams disputes the contention, the allegation is supported by the testimony of Benesh. According to his testimony the Voracek truck was in a stationary position on the west side of the street during the time that the defendants' truck proceeded from 150 to 200 feet toward it. Under the rules announced by us in the cases above quoted from, and the decisions therein cited, a jury question was presented whether or not the defendants complied with the requirements of the assured clear distance ahead rule. The motion for directed verdict was properly overruled and the objection here made to the court's instruction 9 is without merit.

II. Appellant's fourth and fifth assignments of error challenge the correctness of the court's refusal to withdraw from the consideration of the jury the second, third and fourth specific allegations of negligence set forth in the petition, and the including of such allegations of negligence in the statement of the issues. The second assignment of error challenges the correctness of instruction 10, wherein the court undertook to discuss the third specific allegation of negligence. The third assignment of error challenges the correctness of instruction 11, wherein the court discusses the fourth specific allegation of negligence. We will undertake to consider these assignments of error together.

We have already passed upon the second specific allegation of negligence, which is based upon the assured clear distance ahead rule, and have pointed out that there was no error on the part of the court in submitting said allegation of negligence to the jury. The third and fourth specific allegations of negligence are as follows: (3) The failure to drive around the Voracek truck when it was seen or should have been seen in the street, and (4) in failing to stop the truck when it was seen or should have been seen that it was about to collide with the Voracek truck. Appellants contend that ''there is no legal liability on a man for failing to avoid striking a truck which com-

pletely reverses its direction immediately in front of him and comes to rest just as he is proceeding past it and in his path.'' Defendants' evidence tends to sustain appellants' contention, but the plaintiff's evidence, when considered in the light most favorable to the plaintiff, presents an entirely different picture. As above pointed out, the testimony of Benesh, considered with other testimony, supports the third and fourth specific allegations of negligence. The motion to withdraw such issues was properly overruled and the issues were properly included in the court's statement of the issues.

The objection to instruction 10, in addition to the asserting that the evidence did not justify the submission of the third specific allegation of negligence, also asserts that the plaintiff made no allegation in his petition relative to failure to keep a proper lookout. We are satisfied that the allegation that defendants were negligent ''in failing to drive around the truck of Antone Voracek when it was seen by the defendants * * * or when the defendants * * * *should have seen the truck* * * * standing in a stationary position in said street'' asserts that defendants failed to maintain a proper lookout and that there is no merit in the objections to said instruction 10.

The objections to instruction 11, which are argued here, are based upon the assertion that ''the evidence shows absolutely without dispute that there was no time or opportunity for the defendant to have stopped after he saw where the Voracek truck was going and before the collision.'' Here again appellants rely upon their testimony and disregard the testimony of Benesh and other evidence tending to support his testimony. There is also objection that the allegation of negligence did not present the question of keeping a proper lookout. We think that the objection is without merit for the reasons stated in reference to instruction 10.

III. The ninth, tenth and eleventh assignments of error are based upon the assertion that the court refused to give to the jury defendants' requested instructions 1, 2 and 3. These instructions are very similar although not identical. The court's instruction 13 is identical word for word with defendants' requested instruction 2. The proposition there presented is substantially the same as the requested instructions 1 and 3. In view of the fact the court gave defendants' requested instruc-

tion 2, there was no error in refusing to give requested instructions 1 and 3.

■ IV. Appellants' sixth, seventh and eighth assignments of error relate to the court's instructions on the measure of damages being instructions 16, 17 and 18. One of the propositions here asserted by appellants appears to be well grounded.

The plaintiff testified, "I drew my regular salary from the bank all the time I was laid up." Because of this testimony, defendants moved to withdraw the issue asserted in the petition, wherein damages were demanded in the sum of $542 for loss of wages. The motion was sustained. The other items of pecuniary expense, hospital bill, etc., totaling $291.95, were established by the evidence. These items of damage were submitted to the jury and the verdict clearly demonstrates that said items were awarded to plaintiff together with a lump sum of $7,000. The only other elements of damage sought by the petition were pain and suffering, past and future, $3,000, and permanent disability, $12,000. In instruction 16, the four items totaling $291.95 were specifically set forth. Thereafter, the jury was advised that, in addition to said items, if the finding be for the plaintiff, they should allow him such sum as they found from the evidence would reasonably compensate him for (1) loss of earning capacity in the future, (2) pain and suffering already endured, (3) pain and suffering to be endured in the future, (4) permanent physical impairment. The instruction concluded with the statement, "In no event will you allow the plaintiff a total in excess of $15,291.95."

The instruction submitted the element of damage for loss of earning capacity in the future. There is no specific claim in the petition for such damages but it would seem to be included in the claim for permanent disability of $12,000. This element of damage was also submitted, but without advising the jury the amount claimed on account thereof. The elements of pain and suffering were divided into two classifications, one past and the other future, and the jury was not advised of the amount claimed on account of either, although the petition had claimed $3,000 for such items of damage. The court's statement of the issues is subject to the same criticism. Whereas the amounts claimed for the specific items totaling $291.95 are specifically set forth, the court did not advise the jury that the plaintiff

claimed $3,000 for pain and suffering, nor did the court advise the jury that the plaintiff claimed $12,000 for permanent disability.

In the case of Sergeant v. Challis, 213 Iowa 57, 66, 238 N. W. 442, 446, objection was made to an instruction on the measure of damages which failed to advise the jury of the specific amounts claimed for various items and merely advised the jury of the total amount claimed, this court stating:

"This instruction cannot be upheld. The plaintiff in his petition alleged a specific amount of damage for loss of time, a specific amount for nursing and caring for him and a specific amount for permanent impairment or injury, and asked judgment for all of the same in the sum of $6,656.00. The court, in the aforesaid instruction, does not tell the jury what elements may be considered by them in fixing the amount of plaintiff's recovery, nor fix the limit of recovery for the different elements mentioned in the petition to that alleged in the petition, nor as shown by the evidence relative thereto."

The foregoing language was quoted with approval by this court in the case of Andersen v. Christensen, 222 Iowa 177, 182, 268 N. W. 527, 530, wherein we state:

"Complaint is made by the defendant that the court committed error in Instructions 15 and 16, instructions on damages, in failing to limit the amount recoverable by plaintiff, and to the amount established by the evidence, and amongst the other cases cited to support the contention of the defendant herein, is Schelldorf v. Cherry, 220 Iowa 1101, 264 N. W. 54; Sergeant v. Challis, 213 Iowa 57, 238 N. W. 442.

"The instructions given are open to the objections made, in this: that they fail utterly to limit the damages to the amount pleaded in the petition and to the amount sustained by the evidence. A previous instruction stating the issues says that as the result of such injuries the plaintiff suffered great pain and incurred medical and hospital bills amounting to $650, of which amount $223.60 was for hospital bills, and that the total damages was the sum of Five Thousand ($5000.00) Dollars. This is repeated in Instruction 15.

"Instruction 16 is as follows:

"'The damages, if any, to be awarded to the plaintiff

should be such as will fully and fairly compensate her for the damages and injuries which she has sustained. There is no exact rule of law whereby damages for physical and mental pain and suffering, or for permanent injuries can be accurately measured, and in fixing the amount of such damages, if any, much is necessarily left to the sound and sober judgment and discretion of the jury. In any allowance to be made by you, the same must be reasonable. In awarding such damages, if any, and in fixing the amount thereof, you should consider all of the evidence introduced and throwing light thereon, and you should consider the whole matter with a cool, calm and deliberate judgment, free from passion or prejudice, and should endeavor to arrive at such fair sum as will compensate the plaintiff for her injuries.

" 'Plaintiff's recovery in the aggregate cannot exceed the sum of $5,000, with interest, being the amount asked for by her in pleading.'

"This instruction in no way limits the amount recoverable for the various items to the amount pleaded in the petition or to the amount fixed by the evidence."

After quoting from the case of Sergeant v. Challis, supra, we conclude as follows:

"And as supporting the proposition that it was error for the court to instruct as it did, the following cases are authority: Smith v. Standard Oil Co., 218 Iowa 709, 255 N. W. 674; Balik v. Flacker, 212 Iowa 1381, 238 N. W. 467; Desmond v. Smith, 219 Iowa 83, 257 N. W. 543; Schelldorf v. Cherry, 220 Iowa 1101, 264 N. W. 54."

It will be noted that in the Andersen case, other instructions did advise the jury concerning the specific amounts claimed for medical and hospital bills. The case was reversed because instruction 16 alone did not specifically advise the jury in this regard. That case goes farther than appellants ask us to go in this case. Here the instructions at no place advised the jury the specific amount claimed for pain and suffering, nor the specific amount claimed for permanent disability. The two items together amounted to $15,000. Instruction 16 limited the recovery to $15,291.95, from which it could be inferred that $15,000 was sought for the elements of damage other than those

specifically enumerated. As to such items, the jury returned a verdict of $7,000. It was impossible to introduce evidence tending to establish the specific amount that might be awarded for pain and suffering or any specific amount that might be awarded for permanent disability. The amounts to be awarded as to each item necessarily had to be at the best approximations. Appellants were entitled to have the jury advised with reference to the specific amounts claimed by the plaintiff in his petition. In failing to so advise the jury, the court erred.

Counsel for appellee contend that the error is without prejudice and urge upon us, in support of their contention, two decisions of this court, one being Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569, and the other Danner v. Cooper, 215 Iowa 1354, 1364, 246 N. W. 223, 227. Neither case is sufficient to sustain the contention of appellee.

In the Wosoba case, the specific items of damage claimed amounted to $2,776.95, and recovery was sought for general damages in addition thereto in the amount of $20,000. The instructions limited the recovery to $22,776.95. The verdict was for $7,700. The items other than the claim for general damages were specifically established by the evidence and the instructions limited the plaintiff's recovery to the amount shown by the evidence. This court held that, since the allowance for general damages was obviously substantially less than the amount claimed, there was no prejudice in the instruction on the measure of damages.

In the Danner case, the plaintiff asked for damages in the amount of $400 for pain and suffering previously endured, and $2,500 for future pain and suffering. The items of hospital and medical expense amounted to $175, and for loss of time $150. The instructions limited the extent of plaintiff's recovery to $3,225 and advised the jury that plaintiff's recovery could not " ' in any event exceed the sum of $2,900 for physical pain and suffering at the time of the accident, and future pain and suffering.' '' The verdict was for $1,825. This court held that the failure to advise the jury of the specific amounts sought for pain and suffering in the past as distinguished from that to be suffered in the future was without prejudice. It will be noted that the two items were for pain and suffering.

Here $3,000 was claimed for pain and suffering and $12,000

for permanent disability. These items should not have been grouped together. Our holding in the Danner case is clearly distinguishable as is the holding in the Wosoba case. Neither sustains the contention of appellee nor authorizes us to disregard the error here complained of on the theory that it was not prejudicial.

In the cause of Loughran v. Des Moines St. Ry. Co., 107 Iowa 639, 640, 78 N. W. 675, we state:

"This cause was tried in the district court before Philpot v. Lucas, 101 Iowa 478, was determined in this court; and, in view of that case, it is conceded that the instruction of the court is erroneous, but it is urged that the error is without prejudice. From the error in the giving of the instruction, prejudice is presumed, and the record is not such as to overcome that presumption."

So it is here. The court's instructions were erroneous in that they failed to properly present the elements which should constitute the measure of damages in the event of a recovery by plaintiff. Being erroneous, prejudice is presumed unless the record is such as to overcome this presumption. While this court has held on numerous occasions that the record in the particular case involved was sufficient to overcome the presumption, we find no decision justifying such a conclusion under the record here presented to us. We are reluctant to reverse the case on this error alone, but we see no escape from doing so.

V. Appellants' thirteenth assignment of error complains of the verdict as being excessive. It is not necessary for us to discuss or decide that question.

Because of the error hereinbefore specified, the judgment must be and it is reversed.—Reversed.

HAMILTON, C. J., and HALE, SAGER, BLISS, OLIVER, and STIGER, JJ., concur.