Florence E. **BOYLES**, Appellant,

v.

Frank P. **KNAPP**, Appellee.

No. 5079.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 13, 1955.

Orgain, Bell & Tucker, Beaumont, for appellant.

Faver & Barnes, Jasper, for appellee.

WALKER, Justice.

The plaintiff, Knapp, sued the defendant, Boyles, for damages for personal injuries sustained by him in a collision between defendant's automobile and an automobile which plaintiff was driving. This collision occurred on November 10, 1953. The cause was tried to a jury and they found, among other facts, that plaintiff had been injured

in the collision, and they assessed plaintiff's damages at $10,000, and the trial court rendered judgment in plaintiff's behalf against the defendant for this sum and for a sum agreed upon as damages for the injuries to plaintiff's automobile. From this judgment the defendant has appealed.

## Opinion

In the petition, the plaintiff particularized the amounts of his damages. Thus, for "lost earnings and reduced earning capacity", the amount of his damages was alleged to be $12,500; and for "pain and suffering of body and of mind, past, present and future", the amount of his damages was alleged to be $2,000.

Special Issue 21, which submitted the question of plaintiff's damages from injuries to his person, and the instruction accompanying it, disregarded this particularization. Issue 21 asked, so far as material, "what sum of money—do you find from a preponderance of the evidence—would fairly and reasonably compensate the plaintiff for such damages—as he has sustained, or will in reasonable probability sustain in the future, arising out of the negligence of defendant—and as a direct and proximate result thereof, for the personal injuries—sustained by plaintiff in the collision? Answer by stating the amount—." The answer returned was "Ten Thousand Dollars No/100 ($10,000.00)", as we have stated.

The instruction accompanying Issue 21 directed, not authorized but directed, the jury to consider, in making answer to this issue, certain elements of harm and to measure these by the evidence. This instruction, so far as material, read: "in answering the above question you *will* take into account the following elements and no others: (a) such physical pain—(b) such mental anguish—as you may find from a preponderance of the evidence has been sustained by" plaintiff from the time of his injuries on November 10, 1953, up to the date of the trial; "(c) such physical pain—(d) such mental anguish—as you find from a preponderance of the evidence (plaintiff)

will in reasonable probability sustain in the future" as a direct and proximate result of his injuries on November 10, 1953; "(e) the reasonable present cash value of the loss of earnings—by plaintiff—up to the time of this trial, and also the impairment of ability to earn money in the future on account of the injuries—on November 10, 1953."

In substance and effect, this special issue and its accompanying instruction amounted to an affirmative instruction to the jury to assess damages for such physical pain and mental suffering, past and future, as the evidence showed, and to assess damages for such lost earnings and for such impairment of ability to earn money as the evidence showed. This was the construction made, in Texas Cities Gas Co. v. Ellis, Tex. Civ.App., 63 S.W.2d 717, of a special issue analagous to Issue 21, although we note that, in terms, the issue considered in that opinion only authorized and did not direct the jury to consider the elements of injury specified.

We construe the evidence as sufficient to support an award of damages for physical pain and mental suffering which would either be materially more or materially less than the $2,000 alleged by the plaintiff as his damages from these sources. We also construe the evidence concerning time lost from work and loss of ability to work and earn money, or concerning loss of ability alone, as sufficient to support the entire assessment of damages made or, for that matter, a materially larger sum.

The evidence is summarized in a separate paper, but we will state some of the things shown. The period of actual experience, between the collision and the beginning of trial on January 3, 1955, was one week less than fourteen months. Plaintiff was 54 years old at the time of the collision. According to his testimony, he had an earning capacity of about $4,000 a year as a dragline operator when he was injured and in July, 1954, about eight months after the collision, his injuries compelled him to stop this kind of work. He said that he had been employed twice since, once for three

days and once for about five weeks, and as he described this work, especially that during the five weeks, it was light, and during the five weeks he had assistance. Testimony of physicians would authorize a finding that plaintiff was disabled when he quit work in July, 1954, and some of this, with testimony by plaintiff, would authorize a finding that plaintiff had grown worse. Plaintiff's testimony was that he could not retain food; that after varying intervals following a meal he would vomit. He had, in consequence, lost much weight and strength. According to his testimony, he weighed about 210 pounds when the collision happened and about 173 pounds at the time of the trial, a loss of 37 pounds in weight during 14 months, and he described himself as being weak in strength. The testimony given by his own physicians and by the physician who examined plaintiff at the defendant's request presents a series of conflicting opinions as to the source of plaintiff's condition and complaints, but treatment given the plaintiff had not been effective, according to the testimony given in plaintiff's behalf; and from the circumstances testified to by plaintiff and the testimony of his own physicians the jury were authorized to find that at the time of trial the plaintiff was totally disabled to work and earn money and that this condition would continue for a long time in the future and that at least much of the plaintiff's disability would be permanent.

Concerning the sufficiency of such evidence to support the assessment of damages made, see: Texas & N. O. R. Co. v. Coogler, Tex.Civ.App., 209 S.W.2d 778.

■ Defendant made the objection to Issue 21 that it authorized the jury to award damages for physical pain and mental suffering exceeding the $2,000 alleged by plaintiff as damages for these items. The rule of decision invoked by defendant in her argument is stated as follows in City of Dallas v. Jones, 93 Tex. 38, at page 47, 49 S.W. 577, 53 S.W. 377, at page 379: "When the evidence as to an element of damage would authorize a recovery for a greater amount than that claimed in the petition, it is affirmative error to instruct the jury to allow for the amount shown by the evidence." This contention of defendant is based on the form of Issue 21 and its accompanying instruction and on the state of the evidence; and in Texas Cities Gas Co. v. Ellis, 63 S.W.2d 717, the Court of Civil Appeals applied the rule quoted to a situation analogous to this. See also the decisions cited in that opinion and see Remer v. Takin Bros. Freight Lines, Inc., 227 Iowa 903, 289 N.W. 477, at page 482, et seq., cited by defendant, which applies a similar rule of decision to the elements of pain and suffering. However, judgment was determined in that case by a presumption of harm. See: 227 Iowa 903, 289 N.W. 484, headnote 10. It seems, then, that under these decisions Issue 21, with its accompanying instruction, violated the rule of decision quoted from City of Dallas v. Jones. Furthermore, the state of the evidence at the time defendant made the particular objection precluded the use of a remittitur which can be made when damages assessed for a single item, or for a group of items alleged to have resulted in a single sum of damages, exceeds the sum alleged as damages. That is, the form of Issue 21 and its accompanying instruction authorized the jury to make an uncorrectible award of excessive damages for pain and suffering and so it was, in form, erroneous in the respect pointed out by the defendant's objection.

However, this conclusion does not necessarily mean that the trial court's judgment must be reversed. For T.R. 434 forbids reversal for an error of law unless this error "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment," and the error assigned is one of law within the meaning of this rule. That this provision is applicable to the error assigned is established by the following decisions of the Supreme Court. Denbow v. Standard Acc. Ins. Co., 143 Tex. 455, 186 S.W.2d 326; Bostwick v. Bucklin, 144 Tex. 375, 190 S.W.2d 818; Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143; Texas Em-

ployers Ins. Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147; Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191; Dallas Ry. & Term. Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379; Aultman v. Dallas Ry. & Term. Co., 152 Tex. 509, 260 S.W. 596; Ross v. Texas Emp. Ins. Ass'n, Tex., 267 S.W.2d 541; City of Austin v. Cannizzo, Tex., 267 S.W.2d 808; Lumbermen's Lloyds v. Loper, Tex., 269 S.W.2d 367; Childers v. Texas Emp. Ins. Ass'n, Tex., 273 S.W.2d 587. Under these decisions, harm is not to be presumed from the particular error assigned by the defendant despite the fact that the provision quoted from Rule 434 was a part of former Rule 62a, under which harm was often presumed. For instance, Texas Power & Light Company v. Hering, supra, applied Rule 434 to a failure to include a certain limitation in a special issue, and we note that in Ross v. Texas Emp. Ins. Ass'n, supra, the court, at 267 S.W.2d 543, quoted the part of Rule 434 which we have quoted, with other terms of that Rule, and said: "That same provision is repeated in Rule 503. While it is in substance the same as Court Rule 62a, which was in effect prior to the adoption of our Texas Rules of Practice and Procedure in Civil Actions, still it has been given a more liberal construction since the adoption of those rules." The court then stated that Rules 434 and 503 should be construed with Rule 1 and with other Rules applicable. Defendant seems to argue to the contrary because of some statements made by the Court of Civil Appeals on motion for rehearing in Young v. Howell, 236 S.W.2d 247, at page 249. That decision is not in point on the facts as regards the effect of error, for any allowance made for the item there considered was improper, and the court concluded from the allowance of a single sum that something had been allowed for this item. Here, it was proper for the jury to allow something for pain and suffering. The court in Young v. Howell cites Texas & N. O. R. Co. v. Barham, Tex.Civ.App., 204 S.W.2d 205, in support of its judgment, but that opinion does not mention Rule 434 or discuss the question of harmful error, and it does not show clearly whether anything

could properly have been awarded for the particular item or not. It seems a case more like Young v. Howell than this.

It being our conclusion that Rule 434 is applicable to the particular error assigned, we have next to consider whether that error is cause for reversal within the intent and meaning of that Rule. As we have stated, that error plainly authorized an improper judgment, that is, an allowance of more than $2,000 damages for pain and suffering, because the evidence would support an allowance larger than that sum. On the other hand, the evidence certainly did not require such an excessive allowance. The particular item of damages, pain and suffering, is wholly unliquidated; its assessment depends almost wholly on the jury's opinions; and under the evidence concerning plaintiff's injury and loss they were at least as free to assess less than $2,000 for pain and suffering as a sum greater. Ought we, then, to say that this error was "reasonably calculated to cause and probably did cause" the rendition of an improper judgment?

The answer to this question depends upon the evidence concerning plaintiff's injury, disability and loss. We have already considered this evidence in determining whether an error had been committed, but in this case both the existence of the error and the effect which this error had on the assessment of damages depend upon the same evidence, as was true in City of Dallas v. Jones and other cases where the same error occurred.

Since the jury were asked to and did assess a single sum for plaintiff's damages for all of the elements of injury specified in the instruction given with Issue 21, without apportioning it among these elements, they may either have arrived at this sum by assessing separate sums for the various items and returning the total as their answer, or they may have simply determined that the plaintiff sustained various items of damage and then assessed a round sum as damages for all. But in either case, in determining whether the proportion of the sum assessed which is chargeable to pain

and suffering probably did, or did not, exceed the $2,000 alleged by plaintiff, we must estimate the significance and importance which, under the evidence, these elements of damage probably assumed in the jury's minds in comparison with the other elements of damage before them. This estimation cannot be made with mathematical certainty. To some extent it seems speculative, but any assessment of the effect of evidence is, and I do not see that the assessment to be made here is different in kind or in degree from that made in other cases in which the application to be made of T.R. 434 was determined by evidence; Texas Power & Light Co. v. Hering and Lumbermen's Lloyds v. Loper are instances and show, incidentally, what legal certainty is required from such an estimation to prove that an error was not harmful. At any rate, if T.R. 434 is to be applied to the case as the Rule is written, we must make such an estimation or, on the other hand, either must dismiss the claim of error as one impossible to prove, or else take it as enough that the situation could have resulted in an excessive assessment, of which the excess could not have been calculated with the precision needed for a remittitur.

We assume, of course, under the form of Issue 21 and its accompanying instruction that the jury probably did consider the evidence of pain and suffering and that the assessment made probably includes some damages for this item, but this is true of every item of damage listed in the instruction.

These comments bring us back to the evidence itself which we will discuss in more detail, and first, that about pain and suffering: There is no affirmative testimony about worry or mental suffering; one must infer these from the circumstances of plaintiff's condition. There is a considerable amount of testimony from plaintiff showing that he had suffered pain, but most of this is stated in general terms and most of this pain was caused by plaintiff's exertions at work and so, as regards the future, was particularly relevant to the question, how much had plaintiff's ability to work been impaired. It would seem that the

vomiting after meals which was so prominent in plaintiff's testimony would have caused plaintiff pain, but he never did say that it did, and his failure to do so emphasizes the generality of statements about pain when at work.

Next, the evidence about other items of damage: There was evidence, not contradicted, that plaintiff was a highly skilled workman, earning high wages when he was hurt, and the most striking and significant fact which plaintiff's testimony tends to prove is that plaintiff has become disabled and can no longer do work of any kind which requires exertion. The most prominent of the matters testified to concern plaintiff's loss of weight and strength and his inability to retain his food. A more subjective element of disability was his testimony showing that exertion required by his work had hurt him and this points to a source of future pain; but, as we have pointed out, it is as a cause of disability that this future pain is significant. The circumstances testified to by plaintiff and other evidence we have mentioned elsewhere in this opinion tended to prove that plaintiff's disability, or most of it, would persist. The statement of facts shows that it was this matter of loss of earning capacity which was emphasized by plaintiff on trial, not the matter of pain and suffering, and most of the testimony about injury seems directed toward proving a loss of capacity. It is to be noted too, that plaintiff's physicians were agreed upon the existence of plaintiff's disability, although differing as to the causes thereof, while plaintiff's testimony about his pain is not confirmed except as the examinations of him by his physicians showed that he was uncomfortable on those days. There was, in addition, evidence that because of his injuries plaintiff had lost time from his work while employed as a dragline operator, perhaps as much as a month, and that plaintiff had been unemployed for periods which probably amounted to not more than three and one-half months, and the jury could have found that a part of the period between the end of a job in July and the start of a job on August 1st and 2nd was

.traceable to plaintiff's injuries and that at least the two weeks between the end of his work on August 4th and the strike was traceable to plaintiff's injuries. Considering plaintiff's hig wage rate, of about $445 a month or $4,000 a year when he was hurt, the jury could have assessed a substantial sum for loss of earnings.

It is, then, a striking fact that the jury limited their assessment to $10,000, and they must have discounted the evidence of injury given in plaintiff's behalf, as they were entitled to do because of conflicts in the testimony. Nevertheless, their answer to Issue 1, that plaintiff sustained "injuries", shows that they believed that he was hurt and that he sustained more than one form of injury. Plainly, they did believe the evidence for plaintiff which showed that he got more out of the collision than some pain; and on that testimony, the $10,000 assessed as damages for plaintiff's injuries is simply too large to be charged in large part to anything except the plaintiff's disability. Although, as we have stated, we must assume that the assessment probably includes something attributable to pain and suffering, the testimony for the plaintiff tending to prove disability so preponderates over that about pain and suffering in quantity, in significance, and in weight, and in circumstances by which to calculate or assess the damages to be awarded, and in the support of expert medical opinion, and the item of pain and suffering, itself, is so wholly unliquidated in nature and for assessment so dependent upon individual opinion, as to make it improbable that the error assigned caused an improper judgment, that is, an allowance of more than $2,000 for pain and suffering, or the equivalent proportion of the $10,000 assessed as damages. The defendant has not met the burden put on her by this Rule 434.

Defendant has assigned other matters as error, but if any of these amount to error it is not cause for reversal.

The judgment of the trial court is affirmed.