W. H. JORDAN, Appellee, v. D. C. SCHANTZ, Appellant.

No. 42936.

DECEMBER 17, 1935.

S. W. Livingston, for appellant.

Baldrige & Bailey, for appellee.

POWERS, J.—The collision out of which this controversy arises occurred on state highway No. 2 within the corporate limits of the town of Columbus Junction, and near the western limits of the town and in a suburban district. It occurred at about 5:20 o'clock a. m. on the morning of November 8, 1933. Defendant's truck was traveling in a westerly direction. Defendant and his wife were in the cab of the truck, the wife doing the driving. It was dark and about an hour before sunrise. The defendant's truck was without headlights. It was of the tractor-trailer type and was between 55 and 70 feet in length, with dual wheels on the trailer and on the rear of the tractor. The plaintiff was driving an Essex automobile in an easterly di-

rection on the highway. The highway is surfaced with gravel and at the time of the collision there was a ridge of gravel about three feet wide and 15 to 18 inches high along the south side of the highway. It appears that the traveled portion of the road north of this ridge of gravel was about 24 feet wide.

There is a dispute in the evidence as to the circumstances surrounding the collision. The plaintiff's evidence tends to show that just east of the place where the collision occurred there is a curve in the road to the north. The degree of curvature does not appear. Plaintiff claims that when he first saw the truck it was traveling along the edge of the ridge of gravel and on the outside of the curve and on the truck driver's left-hand side of the road; that when the truck came into view he was 135 or 140 feet from it; that he immediately applied his brakes and slowed down his speed and when he saw a collision was imminent attempted to stop; that at the time the collision occurred, the defendant's truck was engaged in angling across the road to the north side thereof, or to the truck driver's right-hand side, the left-hand side of the truck at the front being then approximately in the middle of the traveled portion of the road and the back end of the truck over on the truck driver's left-hand side of the road. The front left-hand side of plaintiff's car collided with the rear left dual wheel on defendant's truck. The plaintiff's testimony is that the truck moved some distance after the collision. When the cars came to rest after the collision, plaintiff's car was facing almost directly north, but not in contact with the truck. The front end of plaintiff's car was at or under the left rear corner of the trailer attached to defendant's truck. The hind wheels of plaintiff's car were at the edge of or in the gravel ridge. According to plaintiff's testimony, there was substantially nine feet between the left rear corner of the trailer of defendant's truck and the gravel ridge; the left front end of defendant's truck was about 12 feet from the gravel ridge and substantially in the middle of the traveled portion of the road. Defendant's testimony tends to show that the defendant's truck was being operated at all times on its right-hand side of the road; that it was stopped when it was hit and was in exactly the position after the collision that it was at the time the collision occurred, and that after the defendant's truck had stopped, it was entirely on the right-hand side of the

1254

road. There is a dispute as to the speed at which plaintiff's automobile was being operated.

■■■ I. It is urged by appellant that if, under the evidence, the court should have directed a verdict for the defendant, then it was error for the trial court to set aside a verdict for the defendant found by the jury. We have stated this to be the rule ordinarily. Bennett v. Ryan, 206 Iowa 1263, 222 N. W. 16. It is not a rule of universal application, however. If the motion for new trial involves questions of the correctness of rulings of the trial court on the admission or exclusion of evidence, the rule might not be applicable. For example, if the plaintiff in a motion for a new trial complained that the court excluded proper evidence bearing upon the question of defendant's negligence and the motion was sustained, it could not be said in that situation that there was error, because under the record made, the defendant should have had a directed verdict. The obvious reason is that if the proffered evidence had been received, the defendant might not have been entitled to a directed verdict. In the case before us, however, the motion for new trial is predicated solely upon the misconduct of the jury in its deliberations and exceptions to the instructions of the court. In such a situation it may properly be said that the rule above referred to is applicable, and that it was error for the trial court to set aside the verdict if the verdict was one which the court should have directed.

The claim that a verdict should have been directed is predicated upon the alleged contributory negligence of the plaintiff. In support of the claim, the propositions chiefly urged are (1) that the physical facts show that there was room for the plaintiff to pass the defendant's truck on the right and that his failure to do so establishes that he did not have his car under proper control; and (2) that the physical facts show that the plaintiff was driving his car at such a rate of speed as that he could not stop within the assured clear distance ahead, and that if he had been able to stop there would have been no collision.

■■■ On the first proposition, the defendant assumes that defendant's truck at the time the collision occurred was in exactly the same position on the highway that it was after the collision occurred. On that question there is a dispute in the evidence, the plaintiff's evidence tending to show that at the point where the collision occurred the rear end of the truck was

over on the south side of the road considerably further than it was at the time the truck came to a stop and at a place where it blocked plaintiff's path. This conflict in the evidence is alone sufficient to make the question one for the jury to decide.

On the second proposition, that the physical facts show the plaintiff was driving at such a rate of speed that he was unable to stop within the assured clear distance ahead, it is sufficient to say that the statute on which the appellant relies is not as directly applicable as the appellant assumes. In every collision between motor vehicles on the public highway in the nighttime, the assured clear distance ahead statute is invoked in an effort to establish negligence per se. That there is much confusion about the application of the statute may be conceded. Much of this confusion may be avoided, however, if it be borne in mind that the statute is a speed regulation only. The statute, instead of fixing a flat rate of speed of a certain number of miles per hour as the limit of lawful speed, adopts a flexible standard and permits the motorist to lawfully drive at any rate of speed which he chooses, provided that such rate of speed does not exceed that at which he can stop within the assured clear distance ahead. The statute finds its most common application where driving is being done at night and where it is said that the driver must not exceed the rate of speed which will permit him to stop within the range of his lights. But all this has to do with speed and speed alone. If the automobile driver is proceeding at a rate of speed which will permit him to stop within the range of his lights on an open highway, he is not traveling at an unlawful rate of speed. It follows that if he collides with some object on the highway under such circumstances, there may be liability on his part, but such liability cannot properly be predicated on the claim that he is guilty of negligence per se because he has violated the assured clear distance ahead statute (Code 1931, section 5029). There seems to be somewhat of a disposition to regard the statute as one prescribing circumstances under which the motorist must stop. Much argument based upon the statute seems to assume that it requires the driver of an automobile to stop before reaching any discernible object which appears before him on the highway. This is not a proper application of the statute. That statute has nothing to do with the question of when a motorist must stop. It is a statute defining proper speed and nothing

more. Of course, there are times when a motorist finds himself between two horns of a dilemma and where it can be said, as was said by this court in Peckinpaugh v. Engelke, 215 Iowa 1248, at page 1255, 247 N. W. 822, 825, that the driver "either [was] paying no attention to what was ahead of him, or * * * he was operating his automobile at such a speed that he could not bring it to a stop within the assured clear distance ahead. In either case, he was guilty of * * * negligence."

Coming now to the instant case, it cannot be said that the assured clear distance ahead statute, or any other statute, requires the driver of an automobile to stop the instant there comes into his view another automobile approaching him from the opposite direction. If that were true, automobiles meeting each other would have great difficulty in ever passing. It is the duty of each driver, under such circumstances, to yield one-half the traveled portion of the road, and within the limits of cities and towns the obligation is to travel on the right-hand side of the road. The plaintiff here had a right to assume that the driver of the defendant's truck would get over on his right-hand side. He was not required to stop until it became apparent to him that the driver was not going to yield one-half of the road, and the obligation to stop then does not arise from the statute, but from the obligation to use ordinary care. The mere fact that a collision occurred in this case does not show, or even tend to show, that the plaintiff was driving at a rate of speed which was unlawful in that such speed did not permit him to stop within the assured clear distance ahead. Our conclusion on this point finds support in the decision of this court in the case of Young v. Jacobsen Bros., 219 Iowa 483, 258 N. W. 104. The collision in that case, as in the instant case, was between an automobile and a truck going in opposite directions, where it was claimed the truck approached on the left-hand side of the road. In that case the automobile took to the shoulder of the road. The automobile in the instant case was prevented from doing that because of the pile or ridge of gravel. We there said:

"The appellee had the right to assume that the truck would not be deliberately driven into him, and he did not know, and could not have known until the instant of the collision, that the truck would not be pulled over to its own right side of the road before a collision could occur."

The motion to direct a verdict against the plaintiff was properly overruled by the trial court. It follows that the granting of a new trial to plaintiff cannot be reversed on the ground that a verdict should have been directed against him.

■■■ II. Appellant's further contention is that there were no errors in the record justifying the trial court in granting a new trial. It is well settled in this state that the trial court has a wide discretion in the matter of granting new trials in jury cases, and that an order of court granting a new trial will not be interfered with on appeal. except where it clearly appears that there has been an abuse of that discretion. We have said that if any one of several grounds of a motion for new trial is good, that the action of the trial court in granting a new trial will be sustained. Perry Nat. Bank v. Engnell, 198 Iowa 26, 199 N. W. 283. We have said further, that even though no single one of them be sufficient in itself, yet, if when they are all considered together, they can reasonably support the conclusion of the trial court that a fair trial has not been had, the order for a new trial will be sustained. Morton v. Equitable Life Ins. Co., 218 Iowa 846, 254 N. W. 325. We recognize that the trial court has a wider discretion in granting new trials than this court has.

In the instant case, there were twenty-two exceptions taken to the instructions given. There was a charge of misconduct on the part of the jury in that some of the jurors did some testifying in the jury room.

■■■ There appears to be ample justification for the order granting a new trial. It is necessary to notice only two grounds. One of the charges of negligence made by the plaintiff in his petition was that the defendant's truck was more than 33 feet long and did not have any lights along the side thereof, as required by section 5044-d2, Code 1931. There was evidence to support this charge of negligence. The court, in its instructions to the jury, did not submit that ground of negligence and apparently overlooked it.

■■■ Moreover, it appears that the court did submit to the jury the question as to whether headlights were burning on defendant's truck. There was no conflict on that question. Defendant, as well as plaintiff, testified they were not burning. The jury should have been told that the fact was established. The only proper issue to submit to the jury in connection with

the headlights was as to whether the defendant had established a lawful excuse for not having them burning. This failure of the court to properly instruct the jury in these two respects was duly excepted to by the plaintiff. Such failure was sufficient in itself, to justify the granting of a new trial.

It follows that the order of the trial court granting a new trial in this case must be, and is hereby, affirmed.—Affirmed.

KINTZINGER, C. J., and all Associate Justices concur.