NORAH SULHOFF, Appellant, v. LOUISE E. EVERETT et al.,
Appellees.

No. 46546.

DECEMBER 12, 1944.

J. A. Williams, of Council Bluffs, for appellant.

Kimball, Peterson, Smith & Peterson, of Council Bluffs, for Louise E. Everett, appellee.

Don H. Jackson, of Council Bluffs, for Bess M. Barnes, appellee.

MULRONEY, J.—The defendant Bess M. Barnes operates a beauty shop in the building owned by the defendant Louise E. Everett in Council Bluffs, Iowa. Her lease describes "The first floor store room and basement in the Everett Block * * *." It appears that the room is L-shaped, fronting on Pearl Street, with the wider portion to the west or rear. A barber has his shop in the same building. The front room of the beauty shop is north of the barber shop and the rear room of the beauty shop is at the west or rear of the barber shop. Along the south side of the barber shop and the south rear of the beauty shop there is a windowless room, variously described as a hallway or corridor. At the east end of this hallway there is a small washroom and lavatory with one door that leads directly to the barber shop and another door that opens into the hallway. Near the southwest corner of the beauty parlor there is a door that opens into the hallway and in the hallway there is a stairway leading to the basement with a trap-door covering that raises back against the south wall of the hallway. We have some difficulty placing this stairway from the record of testimony. Plaintiff, in her statement of facts in her brief, states:

"This hallway or corridor was approximately six or seven feet wide north and south by something like twelve or thirteen feet long east and west and near the center of the south side of said hallway was an opening in the floor three or four feet in width and six or seven feet long which opening leads to a stairway to the basement * * *."

The record reference for this statement is to a paragraph in plaintiff's petition and we cannot find it supported by testimony. However, the statement is unchallenged and all parties seem to agree that the stairway opening was immediately adjacent to, if not right in front of, the door leading to the hallway from the beauty parlor.

Plaintiff had lived in Council Bluffs for a period of about forty years. For four years she had been a patron of Mrs. Barnes' Beauty Shop, going every Saturday to have her hair done. On Saturday, May 9, 1942, she went to the beauty shop and had her hair washed and set, and she testified that "Mrs. Barnes said that if I would come back on Monday she would comb it out for me * * *." On Monday, May 11th, she went to her office until about 11 o'clock, and then she went to the beauty shop, where she told Mrs. Barnes that she was going to a church convention. Mrs. Barnes combed out her hair and plaintiff had a further conversation with her with reference to her coat, and she testified it was a warm day and Mrs. Barnes said to her: "Why don't you just leave your coat and wear your suit?" Plaintiff left her coat at the beauty shop, but returned after the church luncheon to get her coat. She brought a friend with her, Mrs. Bergstrom, whom she had met at the luncheon. She introduced her friend to Mrs. Barnes and asked if Mrs. Bergstrom might freshen her face and if she (plaintiff) could use the rest room. Mrs. Bergstrom was given permission to freshen up and plaintiff testified that in reply to her request to use the rest room Mrs. Barnes said: "Yes, you may, you know where it is." Plaintiff also testified she had been to the rest room before. Plaintiff then walked to the rear of the beauty shop, opened the door into the hallway and fell down the stairway and was injured. The trap door was raised at the time, Mrs. Barnes testifying: "I was making some repairs in the basement."

In her suit for damages against the tenant Barnes and the building owner Everett for the personal injuries she sustained, the trial court, after the plaintiff's testimony, directed verdicts in favor of both defendants.

■ I. We need not discuss all the grounds of the motions that were sustained. Insofar as the defendant Everett's motion was concerned, it is enough to state that the ruling was correct upon the ground that the evidence failed to show that she retained control over the hallway room or stairway. Plaintiff, in argument, recognizes that such retention of control is necessary before the landlord can be charged with liability. Starr v. Sperry, 184 Iowa 540, 167 N. W. 531. But plaintiff argues the

evidence shows joint control. The tenant, Mrs. Barnes, testified: "I had the beauty parlor and all of the hallway to the south under my lease." The door from the main room of the beauty shop to the hallway, was without lock or latch. She had a cabinet in this hallway. Her lease included the "store room and basement" and admittedly there was no other way to the basement save through the trap-door stairway located in the hallway. The agent of the landlord who rented the storeroom to her told her that she and the occupant of the barber shop had the use of the lavatory. There is no evidence that the landlord had the right to enter the hallway. The fact that certain meters, for utilities furnished to the defendant Barnes and other tenants of the building, were located in the basement does not raise a presumption that the landlord thereby retained control of that part of the premises.

II. Plaintiff argues that "the trap door and stairway, as there constructed and being used, constituted a nuisance." Mrs. Barnes testified that when she rented the premises there was a railing around the stairway just to the edge of the trap door and that she had removed it the day before this accident happened. As was said in Lyman v. Hermann, 203 Minn. 225, 229, 280 N. W. 862, 865:

"A trap door cannot be placed in the category of nuisances per se. We find them, as well as coal holes, in sidewalks in the most congested parts of our cities."

We agree with the plaintiff's contention that the landlord would be liable for injuries resulting from a defective construction at and before the tenancy began or if the evidence would warrant a finding that the leased premises, because of such construction, would subject patrons of the lessee to unreasonable risk. If a nuisance existed on the premises it was the tenant, who removed the railing and left the trap door open, who created it. The verdict for the defendant Everett was rightly directed.

III. Although the defendant Barnes states in her brief that "the actual premises upon which plaintiff is alleged to have been injured were not at any time under the control of the defendant Barnes and were not a part of the premises leased

and occupied by her," still she does not argue this proposition. There was sufficient testimony to warrant a jury finding that control over all the premises was in the defendant Barnes. She states in her brief that the "pertinent and controlling question is whether plaintiff at the time of her alleged injury entered the premises of the defendant as an invitee or a mere licensee." We agree that this is the principal question upon this phase of the appeal and the principal issue raised by her motion.

For the purpose of defining the relationship existing between one who goes upon the premises of another and the person in charge of the premises, the courts have called the person who goes upon another's premises a trespasser, a bare licensee, and an invitee.

In Wilsey v. Jewett Bros. & Co., 122 Iowa 315, 319, 98 N. W. 114, 115, we stated:

"* * * it may be stated as a general rule of law that the owner or occupier of real property is under no obligation to make it safe or keep it in any particular condition for the benefit of trespassers, intruders, mere volunteers, or bare licensees, coming upon it without his invitation, express or implied."

See, also, Mann v. Des Moines Ry. Co., 232 Iowa 1049, 7 N. W. 2d 45, and the many cases there cited.

As to an invitee, the holder of the premises owes the duty of reasonable and ordinary care to avoid injuring him. 45 C. J. 823, section 235. We said, in Noyes v. Des Moines Club, 178 Iowa 815, 822, 160 N. W. 215, 218:

"Negligence always rests upon some duty which the party charged owes to the injured person. One who has control of. a building has a duty to those who come upon the premises by invitation, express or implied. He violates that duty when he negligently allows conditions to exist, the existence of which imperil the safety of those who so come upon his premises."

Of course, there is no dispute between the parties here as to the law. The dispute is as to the relationship that existed between plaintiff and the defendant Barnes. The latter argues that plaintiff was a licensee and not an invitee, and contends that she was under no duty to keep the premises safe or in

any particular condition for the benefit of plaintiff. She arrives at this conclusion by pointing to the cases where a licensee was defined to be one who goes upon the premises of another solely in pursuit or furtherance of the business, pleasure, or convenience of the licensee, such as: Keeran v. Spurgeon Mercantile Co., 194 Iowa 1240, 191 N. W. 99, 27 A. L. R. 579; Printy v. Reimbold, 200 Iowa 541, 202 N. W. 122, 41 A. L. R. 1423; McMullen v. M. & M. Hotel Co., 227 Iowa 1061, 290 N. W. 3; Low v. Ford Hopkins Co., 231 Iowa 251, 1 N. W. 2d 95; and Wilson v. Goodrich, 218 Iowa 462, 252 N. W. 142.

Let us first determine plaintiff's status as an invitee or licensee at the time she entered the beauty shop to obtain her coat. Defendant Barnes argues that she was a mere licensee within the general rule that one who goes upon the premises of another with permission, but for his own benefit or pleasure, is a licensee. The argument is that because the plaintiff came upon the premises for her coat, and this would be of no benefit to the beauty shop operator, then she is a licensee as a matter of law. We do not believe this argument sound. To uphold it would mean that the shopper who returns to a store for a package, a purse, a pair of gloves, or other article which the shopper has inadvertently left behind, would be a mere licensee to whom the store owner owes no duty of reasonable and ordinary care with respect to the condition of the premises. Surely the implied invitation to come upon the premises is broader than that. It embraces an invitation to a patron to return to the premises to get that which he left behind when he was a customer. See League v. Stradley, 68 S. C. 515, 47 S. E. 975. But here we have the direct evidence of the invitation extended by the proprietor to the plaintiff. When the defendant Barnes invited the plaintiff, a patron of long standing, to leave her coat at the shop, the invitation carried with it an invitation that plaintiff return to the premises to get the coat. The receiver of an express invitation to come upon the premises is an invitee without any evidence that the visit will directly benefit the invitor.

Plaintiff, then, was an invitee when she returned to the shop for her coat. Did she become a mere licensee when, after receiving permission, she went to the back hallway and rest

room? We think not. Her status before she started for the rest room was that of an invitee. She was a customer returning for her coat. The evidence shows that this toilet was maintained at least partly for the use of customers or invitees. The plaintiff was a customer who had patronized the beauty shop for four years. She was going to a place which, under the evidence, was provided for customers; a place where she had gone before. Surely, if the accident had occurred in the morning while plaintiff was on her way to the rest room after her hair had been combed out, there would be no question of her status as an invitee, even though the work on her hair had been completed. For a case much in point, see American Nat. Bk. v. Wolfe, 22 Tenn. App. 642, 125 S. W. 2d 193. There the plaintiff went to a bank to have a five-dollar bill changed. After receiving her change she began to look for a ladies' rest room. Thinking there might be one in the basement, she started down a stairway and slipped and fell. It was held that, if not a question for the court, it was at least a question for the jury as to whether she was invited to go where she did.

In Stewart v. Lido Cafe, 13 Cal. App. 2d 46, 52, 53, 56 P. 2d 553, 556, the defendant operated a restaurant and bar. The deceased dined in the restaurant and then went into the bar, where he asked the bartender where the lavatory was located. He was directed to the rear and he was later found dead at the bottom of a basement stairway in the rear. It was urged that he was a licensee, but the California Supreme Court stated:

"Whether or not there is an invitation, and the extent of the invitation, must depend upon the circumstances of each case, and under some circumstances these are close questions. The question of negligence on the part of the injured party is involved and where the circumstances are such that reasonable minds might differ as to whether or not he was negligent in going where he did it cannot be said, as a matter of law, that he was merely a licensee. * * * Under such circumstances the question presented is one of fact and not of law, and the evidence is sufficient to support the implied finding of the jury that the deceased was an invitee up to the moment he was injured."

See, also, Pauckner v. Wakem, 231 Ill. 276, 83 N. E. 202, 14 L. R. A., N. S., 1118.

In Low v. Ford Hopkins Co., supra, 231 Iowa 251, 1 N. W. 2d 95, a case where the decedent was killed on the stairs leading to a basement in a store where a lavatory was located which customers occasionally used, we recognized that the question of whether or not she was an invitee was one for the jury. So, too, in this case we feel that under the entire record the question was one for the jury. It is true that the invitor's duty to keep the premises reasonably safe for the invitee is imposed because the former expects to gain some advantage from the visit. But in measuring the extent of the invitation to a long-time patron, a reasonable person might find that such a patron's use of the cloak room or washroom facilities of the shop might be to the mutual advantage of the shopkeeper and the patron. To the latter goes the advantage of the use of an afforded accommodation and to the former goes some advantage in that presumably accommodations used will spell satisfied customers and continued patronage.

For some other cases where the users of rest rooms, kept at least partly for the accommodation of customers, were held to be invitees, see McClusky v. Duncan, 216 Ala. 388, 113 So. 250; Main v. Lehman, 294 Mo. 579, 243 S. W. 91; De Verdi v. Weiss, 16 Cal. App. 2d 439, 60 P. 2d 879; Burdeaux v. Montgomery Ward & Co., La. App., 192 So. 728.

The defendant Barnes relies largely on Keeran v. Spurgeon Mercantile Co., supra, 194 Iowa 1240, 1243, 1244, 191 N. W. 99, 101, 27 A. L. R. 579, and McMullen v. M. & M. Hotel Co., supra, 227 Iowa 1061, 290 N. W. 3. In the Keeran case we held that the out-of-town optometrist, who left his grips and overcoat in a store in Shenandoah, could not recover when he returned for them and fell down a basement stairway. The evidence was that he went to the place where he had seen the clerk put his coat. But there we pointed out that:

"The door leading to the stairway in question was located behind the counter, in the storeroom, and at a place where customers of the store could not be expected to go in the course of transacting business in the store. There was no invitation, express or implied, to the public generally to go to this place. It had no connection whatever with the place of entrance or exit from the store, and was not at a place where the appellee

[storekeeper] could reasonably expect a customer at the store to go.''

Here the record shows that the injury occurred at a place provided in part for customers. Even if the optometrist in the Keeran case was an invitee to the store, there could have been no recovery as long as he was not invited to go to the place where he was injured, so the statement in the opinion that he ''was a mere licensee in going to the store to procure his coat'' must be considered as dictum.

The McMullen case is much closer upon the facts. There this court held the user of a telephone in a drugstore to be a licensee. There was evidence of the use of the telephone by customers, and that the plaintiff had entered the store to make a purchase, and had received permission from the proprietor to use the telephone. Plaintiff there fell down an open trap door located near the telephone. The decision is somewhat weakened by the dissenting opinion of Justice Richards and concurred in by two other justices of this court.

Without attempting to distinguish the case, we would overrule it and hold that under such a state of facts at least a jury question is presented as to the plaintiff's status as a licensee or invitee. For a case so holding, see Ward v. Avery, 113 Conn. 394, 155 A. 502.

Wilson v. Goodrich, supra, 218 Iowa 462, 468, 252 N. W. 142, 145, is not in point for there the defendant's poultry and egg plant was private. As we there stated:

''* * * it was not open to the public as a hotel, bank, or merchandise establishment. The plaintiff [a doctor] was injured at a place in the building where he was neither invited nor expected to be.''

Besides, we there held the doctor was guilty of contributory negligence as a matter of law.

The judgment of the trial court is affirmed as to the defendant Everett, and as to the defendant Bess M. Barnes the judgment of the trial court is reversed.—Affirmed in part; reversed in part.

OLIVER and GARFIELD, JJ., concur.

MILLER, J., and MANTZ, C. J., and HALE, WENNERSTRUM, and SMITH, JJ., specially concur, except in that part of the opinion which would overrule McMullen v. M. & M. Hotel Co.

MILLER, J. (specially concurring)—I believe that the opinion herein reaches the correct result in this case but I am unable to concur in that part of the opinion which would overrule the opinion of this court in the case of McMullen v. M. &. M. Hotel Co., 227 Iowa 1061, 290 N. W. 3. The facts in that case are so different from the facts presented by the record herein that it is entirely unnecessary to overrule the McMullen case to decide this case and I am firmly of the opinion that the McMullen case was decided on sound principles of law.

In the case of Keeran v. Spurgeon Mercantile Co., 194 Iowa 1240, 1242, 1243, 191 N. W. 99, 100, 27 A. L. R. 579, 583, this court states:

"Even though a person is an invitee upon the premises of another, the duty of the owner of the premises to maintain the same in a safe condition applies only to that part of the premises that is appropriated by the owner as a place in which his business is conducted, and the necessary and proper part of said premises reasonably to be used by the invitee to gain access to the portion of the premises used for purposes of business. The invitation, express or implied, to conduct business upon the premises is an invitation to use the premises in the ordinary and usual manner in which business is conducted thereon; and it does not render the owner or occupant of the premises liable for negligence where the invitee is using a portion of the premises to which the invitation has not been extended, either expressly or impliedly, and which the occupant would not reasonably expect the invitee to use in connection with the conduct of business on said premises." (Citing numerous cases.)

The foregoing pronouncement was cited with approval and followed by this court in the case of Knote v. City of Des Moines, 204 Iowa 948, 949, 950, 216 N. W. 52, where, in holding that a plaintiff who fell into an open manhole on the property of the city market could not recover from the city, we stated:

"He was at the place where the public were not expected

to go, and was there solely on a mission of his own. The rules of law applicable to the situation in the instant case were reviewed by us in the recent case of Keeran v. Spurgeon Merc. Co., 194 Iowa 1240.''

The foregoing pronouncements were followed by this court in the case of Nelson v. F. W. Woolworth & Co., 211 Iowa 592, 597, 231 N. W. 665. After quoting the language of the Keeran case, hereinbefore quoted, and citing the Knote case, this court quoted with approval from Wall v. F. W. Woolworth Co., 209 Ky. 258, 272 S. W. 731, wherein the Kentucky court stated as follows:

'' 'If the stairway was upon a part of its [the storekeeper's] premises to which the public was not invited, and had no right to go, the company, as to appellant [the customer], owed no duty to have and keep the place safe. The general rule, as stated in Thompson on Negligence, Section 988, is that a merchant is not required to keep his premises safe, but only that part to which his customers are invited. But this duty does not extend so far as to make such an occupant responsible for the unsafe condition of those parts of his premises not intended for the reception of visitors or customers, and where they are not expected or invited to go.' ''

This court then quoted with approval from the case of MacDonough v. F. W. Woolworth Co., 91 N. J. Law 677, 103 A. 74, wherein the New Jersey court stated as follows:

'' 'She [the customer] saw counters with merchandise displayed upon them, one extending down the middle of the store and one down each side, the latter in front of wall shelves of merchandise, with a space for the saleswomen to work between the wall shelves and the counters. Such an arrangement in itself extended no invitation to a customer to go behind these side counters into the space which was obviously for employees, and in a case involving nothing more, there being no evidence of invitation, a court, and not a jury, question would arise.' ''

Pursuant to the foregoing authority, this court then stated, in Nelson v. F. W. Woolworth & Co., supra, 211 Iowa 597, **231 N. W. 667, as follows:**

"Obviously, therefore, a customer in a store is not an invitee to such portions thereof as are plainly intended for the use of the proprietor and the sales people only. As soon as the customer steps beyond that part of the store meant for the invitee, and enters the space evidently not so intended, he becomes a mere licensee, or trespasser."

In the case of McMullen v. M. & M. Hotel Co., supra, 227 Iowa 1068, 290 N. W. 7, this court applied the foregoing pronouncements to the facts shown in that case, as follows:

"The telephone was located in a part of the premises to which the public was not invited. Plaintiff relies upon the fact that there was no sign on the swinging door, 'Private—Keep Out'. Such a sign was not necessary under the record herein. It was obvious to even a casual observer that the prescription room was a private room and not one into which the public was invited. It was also obvious that the telephone she undertook to use was not a public telephone. The fact that she asked for permission to use it definitely shows that she realized she was undertaking to use a private telephone. In undertaking to step into the prescription room, she stepped beyond the limits of any invitation extended to her as a possible customer of the store, and became a mere licensee."

The principles of law which form the basis for the pronouncement last above quoted are well established and have been repeatedly recognized by this court. For this court to casually overrule them, when such action is not necessary to reach a correct result in the case now before us, would be action with which I cannot concur. Such action would inject confusion into our jurisprudence and would produce nothing but harmful results.

In the McMullen case, the plaintiff entered a private prescription booth to use a telephone. But the same rules of law have been repeatedly applied to the use of toilet facilities. Illustrative cases include Bleich & Co. v. Emmett, Tex. Civ. App., 295 S. W. 223; Thalhimer Bros. v. Casci, 160 Va. 439, 168 S. E. 433; Hudson v. Church of Holy Trinity, 250 N. Y. 513, 166 N. E. 306. And see, also, Hauser v. Chicago, R. I. & P. Ry. Co., 205 Iowa 940, 219 N. W. 60, 58 A. L. R. 687.

The facts now before us differ from those in the McMullen case in many particulars. Among the more important differences are these: In the McMullen case, plaintiff undertook to enter a part of the drugstore which was obviously not maintained for customers. It was private, for the use of employees only. But here the plaintiff undertook to use toilet facilities that were maintained for customers of the beauty parlor. It seems to me that the case comes squarely within the situation envisioned by the Texas court in the case of Bleich & Co. v. Emmett, supra, Tex. Civ. App., 295 S. W. 227, wherein the court stated as follows:

"It is a matter of common knowledge that in the conduct of modern business institutions in cities, it is usual and customary, if not necessary, for those conducting such institutions to keep toilets for the accommodation of its employees and patrons, so that such persons may use them when so required by a call of nature, and that in many large business institutions restrooms are established for the use of patrons. In such cases, if a clerk or other employee or agent of such business were to, when requested so to do, direct a patron of the business to a place where such toilet or restroom could be found, and such patron is injured in going to such place by reason of some dangerous defective condition of the path leading to such place, such condition being known to the owner, or by reasonable care should have been so known, and which was not known, nor by the exercise of ordinary care would not have been discovered by the injured party, the owner would, in our opinion, be liable for such damages as were the proximate result of the act of the owner in maintaining the dangerous condition of the path to the toilet."

Similarly, in the case of Scott v. Kline's, Inc., Mo. App., 284 S. W. 831, 832, the court stated:

"Inasmuch as defendant maintained the toilet in which plaintiff was injured for the use of its customers, plaintiff, in using said toilet, was an invitee, and not a mere licensee. Main v. Lehman, 294 Mo. 579, 243 S. W. 91; Glaser v. Rotschild, 221 Mo. 180, 120 S. W. 1, 23 L. R. A. (N. S.) 1045, 17 Ann. Cas. 576."

The fact situation which formed the basis for the two pronouncements last above quoted accords with that now before us. The law which the foregoing opinion applies is that which was there announced. But the fact situation in the McMullen case was entirely different. It was the difference in the fact situation which accounted for the application of a different rule of law. Hence it is that it is in no way necessary to now pass judgment upon the McMullen case. Certainly, the decision of the case now before us affords no ground or pretext for overruling the well-settled principles of law which were applied by us in the McMullen case. Also, the Connecticut decision, relied upon by the majority, Ward v. Avery, 113 Conn. 394, 155 A. 502, does not present facts in any way analogous to those in the McMullen case.

MANTZ, C. J., and HALE, SMITH, and WENNERSTRUM, JJ., concur in this specially concurring opinion.