ORTAL O. STAFFORD, Appellant, v. BERT GOWING, Appellee.

No. 46653. ·

172

APRIL 3, 1945.

John S. Redd and Eaton & Mauk, all of Sidney, for appellant.

Kimball, Peterson, Smith & Peterson, of Council Bluffs, and Henry Read, of Shenandoah, for appellee.

GARFIELD, J.— Defendant's motion for directed verdict, which was sustained, challenged the sufficiency of the evidence of defendant's negligence and plaintiff's freedom from contributory negligence. We think the case should have been submitted to the jury. We will review the evidence in the light most favorable to plaintiff.

Plaintiff, age forty, employed in a lumberyard in the small town of Farragut, desired a piece of six-inch soil pipe to put in the flue of his chimney. A plumber in Farragut sent plaintiff to defendant, who operated a plumbing shop in the rear of his residence in Shenandoah. Plaintiff went to defendant's residence in the evening, found defendant sitting on his front porch, and asked him for a piece of six-inch soil pipe about a foot long.

Defendant, accompanied by plaintiff, went back to his shop to see if he had the pipe. Defendant found a three-foot length of such pipe leaning upright against the outside of one of two buildings he used for his shop. The pipe was made of cast iron and weighed about sixty pounds. Defendant threw the pipe on the ground between the two buildings. The pipe lay northwesterly and southeasterly.

Plaintiff was standing about four feet directly to the northwest from the end of the pipe. Defendant then went into his shop to get a hammer and cold chisel, returned, "squatted down" on the east side of the pipe and proceeded to cut the end nearest to plaintiff by holding the chisel against the pipe and striking the chisel with the hammer. Five to ten minutes later, when the cutting was nearly completed, a small chip or splinter flew from the cast-iron pipe into plaintiff's eye, causing a painful and serious injury resulting in complete loss of sight in that eye. Plaintiff threw his hand over his eye and said, "I got something in my eye." Defendant instinctively remarked, "I should have warned you." It is conceded no warning of any kind was given plaintiff. Nor did defendant say anything to plaintiff as to where he should or should not stand. Defendant finished cutting the pipe and handed it to plaintiff, who paid him seventy-five cents. Defendant advised plaintiff to see an eye specialist before he left town. There were no other witnesses to the accident.

It is plaintiff's claim that it is inherently dangerous to cut soil pipe with a hammer and chisel because it is susceptible of shattering and chipping; that this danger was known to defendant but not to plaintiff; that defendant was negligent in not warning him of the danger in the cutting of the pipe and also in the manner in which he cut the pipe.

Defendant admits that cast iron characteristically shatters and chips when chiseled. There is little doubt that defendant, a plumber of thirty-five-years' experience, knew of this danger. Plaintiff, however, testifies repeatedly that he did not know of any such danger nor of the characteristics of soil pipe. Defendant argues that plaintiff was bound to know of the dangers incident to cutting pipe with a chisel and brands plaintiff's testimony on this point as "preposterous." We are not justified

in holding as a matter of law that plaintiff must have known of the danger that splinters would fly while the pipe was being cut.

Plaintiff had worked in the Farragut lumberyard about eight years. The lumberyard did not sell soil pipe. Before working in the lumberyard, plaintiff had worked as a carpenter for about eight years but in such work had never used soil pipe nor worked on buildings where it was used. Most of his work had been on farm buildings where soil pipe was not installed. Plaintiff had not used a cold chisel. Plaintiff knew nothing about the method of cutting soil pipe and had never seen it cut before. Some five years before, plaintiff had purchased a piece of soil pipe for his chimney but he did not recall whether it had to be cut to the length he wanted it. Before plaintiff was a carpenter he had been a farmer. Defendant testifies that the fact plaintiff had worked in a lumberyard and as a carpenter had nothing to do with defendant's failure to warn him of the danger of flying splinters.

Savage, a plumber of twenty-five-years' experience, was a witness for plaintiff. Before he was a plumber he had been a farmer. Savage testifies that until he became a plumber he did not know that cast iron was apt to chip when struck and that farm implements are not made of cast iron.

The accident occurred in a space about eight feet wide between the two shop buildings. The buildings, each about twenty by twenty-four feet, abutted on an alley. Plaintiff's car was parked in the alley near the end of the space between the two buildings. It was in the evening and the light was not good. There were shadows that covered the entire space. Plaintiff could not see any pieces fly while the pipe was being cut. Plaintiff was five feet four inches tall and was standing upright while the cutting took place.

Three witnesses testify to the usual method of cutting soil pipe: plaintiff's witness Savage, defendant's witness Doyle, and defendant himself. All agree that it is customary to raise the end to be cut so it is off the ground. This is usually done by placing a piece of wood, generally two-by-four inches, or a piece of ingot lead, about two-by-four, under the pipe at the place to be cut. Savage never had cut a piece of soil pipe

without a two-by-four under it. When the end to be cut is raised it is easier to cut the pipe, less force is necessary, the cutting is done more quickly, and there is less danger of chipping. It is conceded that no piece of wood, lead, or other material was used on this occasion. Defendant had pieces of ingot lead in his shop which could easily have been used. Plaintiff testifies the pipe that was cut rested flat on the ground just where defendant threw it. Defendant contends the pipe was placed on a pile of grass he had raked from his lawn and that the grass served the purpose of a two-by-four or piece of lead. Plaintiff says there was no pile of grass there. Savage testifies a pile of grass would not hold soil pipe in place while being cut unless there was some weight on it to hold it.

Defendant's witness Doyle says the customary method of cutting soil pipe is to place one knee on the pipe. Savage testifies that if the pipe is held firmly while being cut it snaps off more quickly, it takes less "power," and chips less easily than it does where the pipe is lying loose on the ground. Savage says he never cut soil pipe without holding it with his knee. Defendant admits he did not place his knee or other part of his body on or against the pipe while he was cutting it, but says part of the hand that held the chisel came in contact with the pipe. All that held the pipe was the weight of the hand that held the chisel. The little finger and side of the palm were in contact with the pipe. Defendant testifies he was wearing a pair of good trousers he did not want to get dirty so he just "squatted" and that if he had not been wearing good clothes he would have knelt down with one knee on or against the pipe. Plaintiff says he saw the pipe bounce while defendant was cutting it.

There is ample testimony that in cutting soil pipe it chips more freely when hard blows are struck. Defendant testifies, "you don't hit a hard blow. My striking is a more or less continual tapping, light and not a very long blow. * * * You don't have to hit a very hard blow to break that pipe * * *." Savage testifies, "if you are careful and don't hammer too hard, it will not chip so much; but, if you go after it like you meant business, why, any lick that you hit will chip, more so when you are at the last end of it." Plaintiff testifies that at first de-

fendant used light, fast blows, but toward the last and when the splinter got in his eye, the blows were fast and harder.

The excuse defendant gives for not warning plaintiff of the danger from flying chips is that when he started to cut the pipe plaintiff was standing back of him so that defendant's body served as a shield. It is defendant's claim that unbeknown to him plaintiff changed his position by getting in front of defendant before he was struck. Plaintiff, however, says on direct examination, and stoutly maintains under repeated questioning by defendant's counsel, that he never stood behind defendant but occupied the same position in plain sight in front of defendant at all times from before defendant started the cutting until after plaintiff's eye was struck; the pipe was between the two men; defendant was not between the pipe and plaintiff; defendant was facing north and west, partly facing plaintiff. Defendant admits, in effect, that if plaintiff had been standing where plaintiff repeatedly says he did stand, defendant would have warned him of the danger from flying splinters and that he made it a practice always to warn persons who stood at his side or facing him when he was cutting soil pipe.

Defendant introduced the deposition of Lucille Bailey, who lived and worked in defendant's home at the time of the accident. She testifies that plaintiff stood behind defendant at one time when she saw the men. As stated, plaintiff strenuously denies this. Miss Bailey did not see the accident. While, of course, the credibility of the witnesses was solely a question for the jury, we may observe that Miss Bailey's testimony in different particulars is entirely at variance with any other evidence, even that of defendant and his wife. Miss Bailey says defendant was wearing overalls and not dress clothes; defendant admits he was wearing his dress clothes. She says defendant was eating supper when plaintiff came to the back door for the pipe; defendant and his wife both say they were sitting on the front porch and that plaintiff came to the front door. She says defendant had his knees on the ground when he was hammering on the pipe; defendant admits this is not true.

From the foregoing, it is apparent a finding would be warranted that defendant was negligent not only in failing to warn

plaintiff of the danger of flying splinters, of which defendant knew and plaintiff was unaware (as stated, defendant admitted he should have warned plaintiff), but also in the manner in which the pipe was cut—without raising the end of the pipe off the ground, without holding it securely, and in striking harder blows than reasonable care justified. It certainly cannot be said as a matter of law that defendant's conduct constituted reasonable care. Hence the issue of negligence was for the jury. Shatto v. Grabin, 233 Iowa 46, 50, 6 N. W. 2d 149, 151.

 Plaintiff was an invitee upon defendant's premises. It was defendant's duty to use ordinary care to warn plaintiff of any danger of which defendant knew and of which plaintiff was not aware. LaSell v. Tri-States Theatre Corp., 233 Iowa 929, 959, 11 N. W. 2d 36, 50, 51, and citations; Steele v. Grahl-Peterson Co., 135 Iowa 418, 424, 109 N. W. 882, and citations; 38 Am. Jur. 754, 755, section 96.

 In cutting the pipe, defendant was bound to exercise ordinary care not to expose plaintiff to unreasonable risk. Webber v. Larimer Hardware Co., 234 Iowa 1381, 1384, 15 N. W. 2d 286, 288, and citations. While it is not conclusive proof of negligence, evidence of the usual and customary method of cutting soil pipe has a proper bearing on that issue. Id., and numerous citations on page 1386 of 234 Iowa, page 289 of 15 N. W. 2d.

The facts of each particular case of this kind are controlling on the question of negligence. However, these cases tend to support our conclusion that this issue was for the jury: Parish v. Williams, 88 Iowa 66, 55 N. W. 74, 20 L. R. A. 273; Igo v. Boston El. Ry. Co., 204 Mass. 197, 90 N. E. 574; Sprague v. General Electric Co., 213 Mass. 375, 100 N. E. 628; Williams v. Wood, 260 Mich. 322, 244 N. W. 490; Mercer v. Atlantic Coast Line R. Co., 154 N. C. 399, 70 S. E. 742, Ann. Cas. 1912A, 1002, 2 N. C. C. A. 118; Kuske v. Miller Bros. Co., 227 Wis. 300, 277 N. W. 619.

Reynolds v. Skelly Oil Co., 227 Iowa 163, 173, 174, 287 N. W. 823, 828, upon which defendant relies, is readily distinguishable. There plaintiff was injured presumably by a chip from a hammer while defendant was attempting to replace a truck tire upon the rim after a puncture had been repaired. That the

cited case is not applicable here appears from this language in the opinion:

"There is no evidence as to the force of the blow of the hammer or of his method of using it; neither is there any evidence as to the method used or the tools and appliances used to show that they were not the usual and ordinary tools and usual and ordinary methods. In fact, the evidence shows to the contrary. * * *

"Plaintiff's evidence makes no attempt to show that the way in which the work was done was either dangerous or unusual or that the tools used were either dangerous or unusual."

It is also apparent that the issue of plaintiff's freedom from contributory negligence should have been submitted to the jury. If plaintiff's testimony is believed, he had had no previous experience in the cutting of soil pipe and did not know of the danger incident thereto. As stated, we are not justified in holding that plaintiff must have known of such danger. Plaintiff, while under a duty to exercise ordinary care himself, was not required to anticipate negligence on the part of defendant. 38 Am. Jur. 871, section 192; 45 C. J. 954, 955, 956, section 512. In support of our conclusion on the question of contributory negligence, see Webber v. Larimer Hardware Co., supra, 234 Iowa 1381, 1385, 15 N. W. 2d 286, 288, and citations.—Reversed.

HALE, C. J., and BLISS, OLIVER, WENNERSTRUM, SMITH, MANTZ, and MULRONEY, JJ., concur.