C. I. HOLMES, appellee, v. RUTH GROSS, also known as RUTH MAITIS, doing business as RUTH'S CAFÉ, appellant.

No. 49602.

(Reported in 93 N.W.2d 714)

240

DECEMBER 16, 1958.

Stilwill & Wilson, of Sioux City, for appellant.

Crary & Crary and Wallace W. Huff, all of Sioux City, for appellee.

PETERSON, J.—Ruth Gross is in the café business in Kingsley, Plymouth County. She maintains a café known as "Ruth's Café" on one of the main streets of the town. A new building was added to her business in 1954, erected immediately west of the old café, in which new building she maintains a dining room. The only connection between the two places of business was a folding door at about the center of the rooms. Custom-

ers can enter both café and dining room directly from the street.

Plaintiff was sales manager of a Sioux City Lumbermen's Supply Company. On the evening of March 28, 1957, the retail lumbermen of that area had a dinner in the dining room, which he attended. This was his first visit to the café. There were approximately thirty persons present. The dinner was served at a table running lengthwise in the room. After dinner a movie reel was shown.

After the showing of the reel the lights were again turned on. Plaintiff then arose from his chair, as he was desirous of going to a men's rest room. There were no signs as to facilities on any doors or other places in the dining room. In the southeast corner of the room was a ladies' rest room, although on the evening in question no lettering had been put on the door. There was a very large air-conditioning unit about two feet in front of this door, causing the door to be somewhat hidden. At the south end of the room and across the center was a coat rack for customers. In the southwest corner of the room was a planter five feet long. It was on a stand about three feet high and contained shrubs and plants. Immediately back of the planter was a screen, about ten feet in height. Back of the screen was a hallway with two doors. One door was an exit from the building. The other door opened toward the east from the hallway.

Thinking this door led into a men's rest room plaintiff opened the door and discovered it entered into a pitch-dark space. He assumed there was a floor even with the hallway floor, and reached around the doorframe for an electric light switch. As a part of the same motion of his body he stepped over the threshold of the door. Instead of stepping on floor it developed that there was a stairway leading immediately away from the door. He did not find any electric light switch and pitched forward headfirst to the bottom of the stairway.

He was seriously injured. He was confined in the hospital for ten weeks and it was stipulated that his medical and hospital bills amounted to $2049.75. The doctor testified, without any dispute in the evidence, that he had permanent injuries to the extent of 15%.

In the first count of the petition plaintiff alleged negligence of defendant, and absence of contributory negligence as to plaintiff. In the second count of the petition plaintiff alleged the maintenance of a nuisance by defendant. Count II was properly stricken by the trial court before the case was submitted to the jury. Defendant's answer contained five divisions. It was general in its provisions with the exception of an allegation as to assumption of risk on the part of plaintiff.

Defendant moved for directed verdict at the close of plaintiff's case and also after introduction of all evidence. Both motions were overruled. Upon submission to the jury a verdict was returned in favor of defendant.

Plaintiff filed motion for new trial on various grounds which we will consider hereinafter. The motion was sustained. Defendant has appealed from the ruling of the trial court sustaining the motion for new trial.

I. Appellant's first assignment of error is failure of the trial court to sustain motions to direct verdict, filed on basis of no negligence on part of defendant, and presence of contributory negligence on part of plaintiff.

It is elementary that in connection with passing on a motion for directed verdict the evidence must be viewed in the light most favorable to plaintiff. Lathrop v. Knight, 230 Iowa 272, 297 N.W. 291; Crowell v. Demo, 231 Iowa 228, 1 N.W.2d 93; Stafford v. Gowing, 236 Iowa 171, 18 N.W.2d 156; Stupka v. Scheidel, 244 Iowa 442, 56 N.W.2d 874.

In negligence and contributory-negligence cases it becomes imperative that each case is considered on the basis of the facts of that case. While we occasionally find similarities as precedents, the fact remains that in nearly all cases there are some differences which make consideration of the facts of each particular case a matter of importance.

In Stafford v. Gowing, supra, we recognized that situation when we stated (page 177 of 236 Iowa, page 159 of 18 N.W.2d): "The facts of each particular case of this kind are controlling on the question of negligence."

Appellant has cited a number of cases pertaining to stairways and to falling into elevator areaways. In each case cited there seems to be a somewhat different state of facts.

We show below a sketch of the dining room in order to clearly illustrate the room, its appurtenances, the stairway and plaintiff's route to the stairway (dotted line).

■ The question of whether or not it was correct to submit the case to the jury depends on whether or not the physical circumstances surrounding defendant's place of business are such that prudent and reasonable minds might differ as to the question of negligence. Downing v. Merchants Nat. Bk., 192 Iowa 1250, 184 N.W. 722, 20 A. L. R. 1138; Odegard v. Gregerson, 234 Iowa 325, 12 N.W.2d 559; Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120; 65 C. J. S., Negligence, section 251.

In this modern day with so many automobiles traveling through the country and passengers stopping for meals at restaurants and cafés, and with the family of today going out often for meals instead of cooking at home, the presence of ladies' and men's rest rooms in a café is almost as essential as tables and chairs.

There was a men's rest room in the other building, where defendant had a café, but it was a separate building. The door was closed between the two buildings and this situation does not avail defendant as to absence of negligence in connection with her rest room situation.

Referring to the planter and screen in the southwest corner of the dining room, plaintiff testified as follows: "I went to the southwest corner of this room rather than the southeast corner because this planter in front of the alcove back there led me to believe it was hiding the entrance to the rest room. When I referred to the planter I meant the screen * * *. The glass panel or screen does not go clear to the ceiling."

On the evening in question there was no lettering on the stairway door. Since that time the word "Stairway" has been printed on the door in large black letters.

In addition to the inherent danger involved in the physical situation defendant had been warned as to this dangerous stairway on two occasions. Repeated warnings as to a dangerous condition had a bearing on whether or not she was negligent in the maintenance of her place of business.

In November of 1954, Mrs. William Hoyt came into the dining room for a meal. As to the stairway door she testified:

"Q. Did you see a door located in the southwest corner of the dining room? A. After I passed behind this screen

that was there. Q. Did you open that door? A. I did. Q. And what happened? Tell the jury what happened. A. As I opened the door expecting to step into the rest room * * * I fell forward. The door went inward. I fell. Yes, I fell forward. * * * There was no sign on the door at that time. I did not observe any signs in the dining room * * * indicating where the rest rooms were located. Mrs. Gross was not there at the time I fell but I, at a later time, informed her."

On March 13, 1956, which was about a year before plaintiff's injury, Mrs. Eva Royer came into the dining room to secure a cup of coffee. She testified:

"I went in the restaurant somewhere around one in the afternoon. One of my purposes was to go to the rest room. * * * As I proceeded behind the planter, I walked to the door and opened it and fell into the basement. * * * There was no sign or marking on the door that day. * * .* After I fell down the stairs I saw Mrs. Gross and told her that I fell."

It is fortunate, but miraculous, that neither of these two ladies was seriously injured.

Another element was present in connection with defendant's negligence. Plaintiff reached around the doorframe to turn on the electric light switch. At that moment he fell to the bottom of the steps. The record shows that Mr. Gross, husband of defendant, who was apparently working for or with defendant in the restaurant business, had unscrewed the bulb in the light at the bottom of the stairway. If Mr. Holmes had found the light switch it would not have been of any value to him, because with the bulb unscrewed the light would not have gone on. On the other hand, if Mr. Gross had left the bulb screwed in the light socket the accident would never have happened because the stairway would have been completely lighted as Mr. Holmes opened the door, instead of being "pitch-dark" as he testified.

█ There were sufficient elements of negligence involved in defendant's situation in her dining room that evening so that prudent and reasonable minds could differ as to conclusions to be drawn therefrom. The circumstances as to negligence were sufficient to justify submission to the jury. We can well say, as we did in Lindquist v. Des Moines Union Ry. Co., supra,

(239 Iowa at 370, 371): "Could a reasonable-minded person find negligence from this record? * * * [It is a] fact question to be determined by the jury."

65 C. J. S., supra, Negligence, section 251, page 1116, states: "With respect to the nature and state of the proof, the case should be submitted to the jury where * * * the evidence is conflicting or is such that reasonable men may fairly differ as to the conclusions or inferences to be drawn therefrom."

■ II. The question of contributory negligence on the part of plaintiff raises a similar situation. Here again we have held innumerable times that if the facts of a case, or the conclusion as to the facts, are such that reasonable minds differ, it becomes a question for the jury. Downing v. Merchants Nat. Bk., supra; LaSell v. Tri-States Theatre Corp., 233 Iowa 929, 11 N.W.2d 36; Odegard v. Gregerson and Stafford v. Gowing, both supra; 38 Am. Jur., Negligence, section 192; Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 26 N.W.2d 429; Tucker v. Tolerton & Warfield Co., 249 Iowa 405, 86 N.W.2d 822.

When plaintiff saw the planter and the screen in the southwest corner of the room, it almost amounted to an invitation to him to proceed back of the screen in the corner to look for a rest room. At least he was lulled into a sense of security as to the presence of a rest room under the existing circumstances. There were two doors. He could see one was an exit door. Under these circumstances he had a right to believe the other door might logically lead into a rest room.

■ Appellant emphasizes the fact that when plaintiff was found at the bottom of the stairway he told defendant's husband the fall was his own fault; he also told defendant the same when she visited him at the hospital. He was seriously injured and in some shock, when found at the bottom of the stairway, and seriously sick in the hospital, and his statements, under such circumstances, while proper for consideration by the jury, are not conclusive as to contributory negligence. The final test is what actually happened and the physical surroundings involved in the case.

We will quote from some well-known decisions, as to question of contributory negligence, and its submission to the jury:

Downing v. Merchants Nat. Bk., supra (page 1255 of 192 Iowa, page 726 of 184 N.W.) : " 'It is a sound rule of law that it is not contributory negligence not to look out for danger when there is no reason to apprehend any.' "

Tucker v. Tolerton & Warfield Co., supra (page 409 of 249 Iowa, page 825 of 86 N.W.2d) : "As defendant also admits the issue becomes one of law for the court only in the exceptional case where plaintiff's want of reasonable care is so manifest and flagrant as to convince all fair minds plaintiff did not exercise the caution for his own safety which marks the conduct of ordinarily prudent men. It is ordinary care, not the highest degree of care, that is required."

Hull v. Bishop-Stoddard Cafeteria, supra (page 690 of 238 Iowa, page 451 of 26 N.W.2d) : "The issue of plaintiff's freedom from contributory negligence should have been submitted to the jury. Proximate cause and contributory negligence are questions for the jury save in the very exceptional case when all reasonable minds must unite in a contrary conclusion."

Stafford v. Gowing, supra (page 178 of 236 Iowa, page 159 of 18 N.W.2d) : "Plaintiff, while under a duty to exercise ordinary care himself, was not required to anticipate negligence on the part of defendant."

38 Am. Jur., Negligence, section 192, page 871: "* * * ordinarily the plaintiff need not anticipate negligence, and ordinarily his failure to anticipate negligence does not constitute negligence on his part which will defeat an action by him for the injuries sustained."

65 C. J. S., Negligence, section 83 : "* * * as to the persons toward whom a duty of care exists, the owner or occupant of property must exercise reasonable care to protect persons rightfully upon his premises from traps, pitfalls, or hidden dangers."

65 C. J. S., Negligence, section 116, page 707 : "* * * the standards and tests for determining contributory negligence ordinarily are the same as those for determining negligence * * *. The distinction lies in that negligence involves a risk of injury to another whereas contributory negligence involves a risk of injury to the one injured."

The circumstances and conditions were such that the trial court was correct in overruling the motion for directed

verdict on the ground of contributory negligence, and in submitting the question to the jury.

III. Appellant asserts plaintiff was not an invitee at the time of his injury. Because of the nature of the accident she asserts that when he left the table and proceeded to look for the men's rest room, and by mistake opened the door to the stairway, his status as an invitee ceased.

The general definition of an invitee is that he is one who goes to a place of business either by express or implied invitation of the owner or occupant on business of mutual interest to both or in connection with the business of the owner. Noyes v. Des Moines Club, 178 Iowa 815, 160 N.W. 215; Wilson v. Goodrich, 218 Iowa 462, 252 N.W. 142; Rodefer v. Turner, 232 Iowa 691, 6 N.W.2d 17; LaSell v. Tri-States Theatre Corp., supra; Sulhoff v. Everett, 235 Iowa 396, 16 N.W.2d 737; Stupka v. Scheidel, supra.

We find a good definition of the responsibility of an owner in LaSell v. Tri-States Theatre Corp., supra (page 946 of 233 Iowa, page 45 of 11 N.W.2d), as follows: "It is a general rule, recognized without dissent, that an owner or occupant of buildings or premises, who directly or impliedly invites or induces others to enter therein, owes an active, affirmative duty to such persons to use reasonable, ordinary care to keep such premises in a reasonably safe condition, so as not to unreasonably or unnecessarily expose them to danger."

As an illustration of a decision by this court which established the status of an invitee as being broader than simply coming into a store and buying a coat, or going to a beauty parlor for hair service, or going into a dining room and sitting at the table to eat, we quote the following from Sulhoff v. Everett, supra (page 401 of 235 Iowa, page 739 of 16 N.W.2d) : "The argument is that because the plaintiff came upon the premises for her coat, and this would be of no benefit to the beauty shop operator, then she is a licensee as a matter of law. We do not believe this argument sound. To uphold it would mean that the shopper who returns to a store for a package, a purse, a pair of gloves, or other article which the shopper has inadvertently left behind, would be a mere licensee to whom the store owner owes no duty of reasonable and ordinary care with

respect to the condition of the premises. Surely the implied invitation to come upon the premises is broader than that."

 Plaintiff came upon the premises as an invitee. He was a part of the group which came to the dining room of defendant, a public place, and was served his dinner, for which he paid $1.75. It is a question of fact to be submitted to the jury as to whether or not under the circumstances he continued to be an invitee. In view of the present-day custom, which now amounts to almost a requirement, that modern and up-to-date cafés maintain rest rooms, he would be an invitee while going to or coming from and while in a rest room. 65 C. J. S., Negligence, section 48(c). This would have been his situation if he had gone into a men's rest room. However, since the unfortunate accident occurred in connection with his attempt to go to a rest room, it becomes a question of fact for the jury as to whether or not he was still an invitee.

The headnote as to the article in C. J. S., supra, on this subject is as follows: "A customer or other business visitor of a store or place of business retains the status of an invitee or business visitor while going to, returning from, or making use of, a toilet which is maintained for the use of customers or other business visitors or which customers or other business visitors are ordinarily permitted to use."

The trial court properly submitted the question to the jury, and we hold that in connection with the instructions to the jury when the case is retried it should again be submitted as a question of fact for the jury to decide.

IV. Appellant vigorously contends the instructions of the trial court when considered as a whole were correct. It is appellee's position that the trial court committed serious and prejudicial errors and was justified in granting the new trial on the basis of such errors.

 We have held in many cases that the trial court has a wide discretion in connection with the granting of a new trial. Perry Nat. Bk. v. Engnell, 198 Iowa 26, 199 N.W. 283; Morton v. Equitable Life Ins. Co., 218 Iowa 846, 254 N.W. 325, 96 A. L. R. 315; Jordan v. Schantz, 220 Iowa 1251, 264 N.W. 259; Greiner v. Hicks, 231 Iowa 141, 300 N.W. 727; Wilson v. Iowa State Highway Comm., 249 Iowa 994, 90 N.W.2d 161.

250

█ In the recent Wilson case at pages 1000, 1001 of 249 Iowa the court quoted from the Jordan case as follows: " 'It is well settled in this state that the trial court has a wide discretion in the matter of granting new trials in jury cases, and that an order of court granting a new trial will not be interfered with on appeal except where it clearly appears that there has been an abuse of that discretion. We have said that if any one of several grounds of a motion for new trial is good, that the action of the trial court in granting a new trial will be sustained.' "

. The three instructions on which the trial court granted a new trial were Instructions Nos. 4, 6 and 12.

█ In the instructions the court used the modern term of "and/or" in five different places. Some of the places where the phrase was used were unfortunate. In general terms "and" means to add something to what has already been said; "or" means in the alternative.

We have heretofore frowned on use of the term in Popham v. Case, 223 Iowa 52, 57, 271 N.W. 226, 229, in which we said: "While it may not be necessary to a determination of the questions presented by this appeal, the writer of this opinion [Justice Sager] wishes to express his disapproval of the use of that mongrel expression which finds place in the pleadings: 'and/or'."

The general consensus of opinion in cases in many jurisdictions over the nation is contrary to the use of the expression. In 41 Am. Jur., Pleading, section 43, it is stated: "As a matter of pleading, the expression 'and/or' has met with unfavorable comment. It has been characterized as an equivocal connective, being neither positively conjunctive nor positively disjunctive. Seemingly, in most cases the expression is subject to special demurrer, and it may render the pleading itself subject to general demurrer."

A comprehensive analysis of the term, showing various decisions where it has been approved for some reason, and others in which it has been disapproved, appears in Volume 3, Words and Phrases, page 640.

We now hold it is not advisable to use this term in instructions. It might be used in connections where it is not prejudicial

error, but the phrase is often so unsatisfactory and misleading it should be left out of instructions.

V. The other basis on which the trial court granted a new trial was that prejudicial error had been committed in Instructions Nos. 4, 6 and 12 in connection with instructing the jury as to assumption of risk.

In Instruction No. 4 the trial court listed the elements necessary for plaintiff to prove by preponderance of evidence, and among such elements stated he must prove he "did not assume the risk thereof."

. In Instruction No. 6 the court explained the theory of assumption of risk but still put the burden of proving absence thereof upon plaintiff.

In the first paragraph of Instruction No. 12 it again listed in paragraph 1 that the jury must determine whether plaintiff himself "assumed the risk of defendant's negligence, if any." In the last paragraph of Instruction No. 12 the court does veer from placing the burden on plaintiff to placing it on defendant by stating "if the defendant has not proved by preponderance of evidence that plaintiff assumed the risk of defendant's negligence, if any."

Appellant urges that the use of this last paragraph cured the errors in Instructions Nos. 4, 6 and first paragraph of 12. Prejudicial and irreparable damage had already been done when the court instructed in Nos. 4 and 6 and the first paragraph of No. 12 that there was a preponderance of burden on plaintiff to establish absence of assumption of risk. The instructions were conflicting, and 4, 6 and the first paragraph of 12 erroneous.

This is an ordinary case of negligence and contributory negligence and the matter of assumption of risk should not be injected into the case. White v. Zell, 224 Iowa 359, 276 N.W. 76; Edwards v. Kirk, 227 Iowa 684, 288 N.W. 875; Bohnsack v. Driftmier, 243 Iowa 383, 52 N.W.2d 79, 84; 38 Am. Jur., Negligence, section 174.

Ordinarily the doctrine of assumption of risk is involved in cases as between master and servant. However, it does occur in other fields of human activity. In Bohnsack v. Driftmier, supra, we said at page 392 of 243 Iowa: "Mere

lack of care, without more, does not amount to assumption of risk. The doctrine involves a choice between a course known to be dangerous and one that is not." A definition quoted from 18 Iowa Law Review 358, 361, appears in the same case. " 'The doctrine of assumption of risk is not based on negligence but the voluntary assumption of the danger by the plaintiff with full knowledge thereof * * *.' "

In 38 Am. Jur., supra, section 173, page 848, we find the following statement: "The doctrine of assumed risk is based upon voluntary exposure to danger and is applicable only in cases where the injured person might reasonably elect whether or not he should expose himself to the peril. If the exposure of the injured party to the peril was due to his inability reasonably to escape after he became, or should have become, aware of the danger, the doctrine does not apply."

It was error for the trial court to submit the question of assumption of risk in the manner in which it was submitted, and under the facts of this case the question of assumption of risk should not have been submitted to the jury and should not be included in the instructions when the case is retried.

We hold the trial court should not have directed a verdict for defendant. We also hold the action of the trial court in granting a new trial was correct. The case is affirmed.

 Appellee's printing cost is computed at $2.40 per page for forty-nine pages. By rule we limit ordinary printing cost to $1.50 per page. Any cost above this amount shall not be taxed to appellant.—Affirmed.

GARFIELD, C. J., and BLISS, LARSON, LINNAN, OLIVER, and WENNERSTRUM, JJ., concur.

THOMPSON and HAYS, JJ., dissent.

THOMPSON, J. (dissenting)—I am unable to concur in Division II of the majority opinion. I am not convinced that one upon whom rests the burden of proof to show freedom from contributory negligence carries it by evidence that he opened a closed door, with no knowledge of what was on the other side, and plunged forward into total darkness. He made no inquiry as to the location of the toilet he was seeking; the door was not

marked and he should at least have proceeded with caution, if he chose to blunder about in unknown territory.

I also see no materiality in the discussion in Division IV of the discretion of the court in granting a new trial. This for the reason the court did not purport to exercise its discretion, but placed its ruling on what it thought to be errors in instructions. Error there may have been; but if the defendant was entitled to a directed verdict because of plaintiff's failure to show freedom from contributory negligence, it was not prejudicial.

HAYS, J., concurs in this dissent.